AMERICUS, JULY TERM, 1850.                479

Doe ex dem. Gledney and another, *vs.* Deavors.

No. 79.—DOE *ex dem.* SAMUEL GLEDNEY and another, administrators, &c. plaintiffs in error, *vs.* ISAAC B. DEAVORS, defendant in error.

[1] Taxes due to the State are a general lien upon all the property of the debtor, attaching on the 1st of January in each year.

[2] Where property, liable to tax, is sold under execution between the 1st January and the giving in or return of the same, and is afterwards sold under execution to pay the tax due by the defendant in execution:  *Held,* that the purchaser at the Tax Collector's sale gets a good title.

Ejectment, in Sumter Superior Court.   Tried before Judge WARREN, May Term, 1850.

This was an action of ejectment by the administrators of Arnold Godwin, to recover a lot of land in Sumter County.   Defendant claimed under a deed from the Sheriff of Sumter County, reciting that the land had been levied on and sold on the 1st Tuesday in April, 1841, as the property of one John Deupree. Plaintiff claimed under a Tax Collector's deed, reciting that the property had been sold on the 1st Tuesday in December, 1841, for the taxes of John Deupree, for the year 1841.

The Court charged, that " the lien or security of the State, for tax due from John Deupree for the year 1841, was destroyed by

the Sheriff's sale, and the subsequent sale conveyed no title, unless the Jury believed that the Sheriff's sale was made for the purpose of avoiding the payment of taxes due; and that the only preference that existed for said tax, was the right of the Tax Collector to claim out of the fund raised by the Sheriff's sale."

This decision is brought up for review.

E. R. Brown and B. Hill, for plaintiff in error, cited the following authorities:

*Hotchkiss,* 150, 4, 8, 9.  7 *Com. Dig.* 90.  *Rankin et al. vs. Scott,* 6 *Cond. R. U. S.* 404.  2 *Kelly,* 143.  8 *Ga. R.* 300.  *Shotwell vs. Murray,* 1 *John. C. R.* 513.  2 *Bay.* 249.  14 *Sergt. & R.* 257.

H. K. McCoy, for defendant, cited:

*Forsyth vs. Clark, Dudley's (Ga.) Rep.* 15.  3 *Wend.* 637.  1 *Peters,* 438.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] This was an action of ejectment. The plaintiff claimed under a Tax Collector's deed, and the defendant under a Sheriff's deed. The Sheriff's deed bears date in *April,* 1841, and the Tax Collector's deed in *December* of the same year. The Sheriff sold the land under an execution in favor of a citizen, as the property of the defendant in execution. The Collector caused the same land to be sold for the taxes due by the same defendant, assessed for that year. The question of title being before the Circuit Court, the presiding Judge instructed the Jury, " that the lien or security of the State, for the tax due from the defendant in execution for the year 1841, was destroyed by the Sheriff's sale, and the subsequent sale conveyed no title, unless the Jury believed that the Sheriff's sale was made for the purpose of avoiding the payment of taxes due, and that the only preference that existed for said tax, was the right of the Tax Collector to claim out of the fund raised by the Sheriff's sale." To this charge the plaintiff in error excepted, and the question is, whether the tax due by a citizen is a lien upon his property, which can be enforced by a re-sale, in a case

Doe ex dem. Gledney and another, *vs*. Deavors.

like this, where the property has been sold under a general judgment before it is returned, yet after the tax upon it has been imposed by law. The presiding Judge does not seem to hold, that generally taxes are not a lien, but believes that the lien was destroyed by the Sheriff's sale, and that after such sale, the only way in which the State can collect her taxes, is by putting in a claim upon the fund. Inasmuch as the land had been sold, the view of the Judge seems to be, that the State occupied the position of a favored or preferred claimant on it, and failing to assert her claim, lost it, unless the sale by the Sheriff was intended to defeat the payment of the taxes. The question is an important one, and it will be necessary to consider, generally, the question, to what extent assessed taxes are a lien upon the property of the citizen, and if they are a lien particularly, whether in this case it was, as held by the presiding Judge, destroyed by the sale by the Sheriff. The right to tax the whole property of the citizen for the defence of the State and the support of the government, is not a questionable proposition. It is an incident of sovereignty. All property which vests in the citizen by grant from the estate, is liable to taxation, without a reservation of the right to tax. That right grows out of the right of the citizen to governmental protection and the corresponding obligation of the government to protect him. *Revenue* is indispensable to the maintainance of all the privileges and immunities of the people—it is also indispensable to national independence, without which individual immunities and privileges are valueless. Hence it is, that in the very nature of the social compact, as a basis upon which the foundations of government are laid, the property of the citizen is pledged for these purposes—pledged without any express declaration of a pledge. In the act of organizing a government, the pledge is implied. It is one of the elements of national being. The people who make a government, *ipso facto*, assent to it. This inherent right to lay and collect taxes, may be limited and regulated by the fundamental law, as it is by the constitution of our union. The amount and the mode of assessment, and the manner of collecting it, lies within the legislative competency, to be arranged from time to time, by law, according to the public exigencies. In this country the people impose the taxes which they pay, through their representatives, and the taxing power is not, therefore, likely to be abused. Upon these principles, it has been held, in a sis-

ter State, that the taxes due, in the absence of any legislative declaration upon that subject, are a mortgage to the exclusion of any other lien or incumbrance. The decision goes upon the idea, that the obligation to support the government precedes and is paramount to every contract between citizens; and without amplifying this general doctrine, I leave it with my concurrence. 2 *Bay's Rep.* 244.   4 *Peters' R.* 514.   4 *Wheat.* 428.

However sufficient these principles may be to sustain the tax lien, we are not left to them alone. In our judgement, the laws of the State give to assessed taxes a lien which overrides every other security or incumbrance. By the 14th section of the Act of 1804, which is still of force, it is declared, that " the taxes imposed by this Act shall be preferred to all securities and incumbrances whatever." *Prince,* 847. This section creates a lien. It is argued that it only gives a preference or creates a *grade* of debt, in contemplation of a contest with other securities and incumbrances. Our opinion is, that it creates a general lien, which attaches at the time when the property is liable by law to taxation, upon all the property of the citizen. It is true that the phraseology of the Act might have been more plainly declaratory of a lien. But what is its effect? A legal preference, that is priority, is given to the taxes, not only over all incumbrances whatever—such as mortgages and judgements—but also over all *securities*—securities by title, as well as other securities. A deed, therefore, upon private sale, will not defeat the preference. It inhibits a sale to the exclusion of the taxes. And it can only defeat the security of a deed, upon the idea of a lien on the property. If a title by deed, upon private sale, will not defeat the tax lien, a title by deed upon a judicial sale will not, *a fortiori;* for, the lien of the judgement, under which the purchaser at the judicial sale gets his title, is unquestionably postponed by the Act. There is no particular form of words necessary to create a lien. The plain import of this Act is a legal preference for satisfaction *out of the property* of the person taxed, over every security and every incumbrance, and that is a lien. The Legislature, no doubt, intended simply to declare the great fundamental principle, that the *property* of the citizen is pledged to the exclusion of all private contracts—to the support of the government. That principle elucidates the enactment. If the lien exists without a legislative declaration—if it be an elementary principle of government, re-

cognized by the ablest statesmen, it can hardly be presumed that the legislature intended to innovate upon and weaken it.   If the Act only creates a preference over other claims, it is available for the protection of the State, only when a citizen is dead and his estate is for destribution, or when he is insolvent, or when there is a fund in hand for distribution.   Upon this idea, it looks to marshaling assets.   And in case of the alienation, *bona fide*, of property by private sale, this construction would wholly defeat the security of the State.   In this very case, as I shall show, it would defeat the collection of taxes altogether.   I do not mean to say, that when the money of the citizen is in the hands of the Court, and the tax is in a situation to be presented as a claim upon it, that that claim would not be good.   If the Act creates a lien on property, the lien equally attaches upon its proceeds.   But in such a case, I do not believe that the lien of the State would be lost by its agent failing to put in a claim upon the fund, upon the principle that no *laches* can be imputed to the State.   It is not enough to say, that the collector and his security would be in that case liable, for that liability is only a cumulative security for the State. The lien is a general one.   The whole property is bound for the taxes.   That it is not confined to the specific property upon which each item of the tax arises, is manifest in this.   The law requires the personal estate first to be sold to pay the tax, and if none, or not enough, then the real estate.   Accordingly, taxes originating on lands may be paid out of the personal estate, and *vice versa*.   It takes effect when, by law, in each and every year the property is made taxable—that is to say, on the first of January.   It is the imposition of the tax by law which appropriates, if needs be, the property of the citizen to the public use.   The lien, therefore, does not commence only with the return of the property, or with the return of the digest by the Receiver to the Collector, or with the issuing of execution to enforce payment. *Dudley*, 15.   8 *Watts & Searg. R.* 449.

It is argued that the taxes are not a lien, from certain provisions of the tax law—such as that which declares all sales, made to prevent their payment, void—that which makes them first to be paid, in case of the death of the debtor, and charges the administrator, personally—and that which charges the mortgagee with the tax due upon the mortgaged property.   These provisions of law do not set aside the lien created by the 14th section,

nor are they incompatible with it. Some of them, it may be, are unnecessary—as for example, that which declares void all gifts and conveyances, &c. made to avoid the payment of taxes. If there is a lien, this provision is useless. All these things, and others—for example, the summary process with which the Collector is armed to collect, and the prohibition of all judicial interferance between the State and the debtor, look to the same end, and that is the *prompt and necessary* payment of the taxes. The State must have her revenue, at all hazards. Hence these various stringent provisions of law to constrain payment. Prompt collection is as necessary as the lien. But if, in all cases of sale of the property, as here, the State is to rely upon the fund, she may be delayed by litigation, and is really made dependent upon judicial interferance. She must put in her notice, or file her injunction—await the regular time for a hearing—abide delays, continuances and collateral issues. In short, she is no better off than any other judgment creditor. No. To collect taxes, the State moves with uncontrolable power directly and instantaneously upon the property; and if, in the exercise of this stern but necessary attribute of sovereignty, the citizen is injured, his only redress is by petition to the Legislature.

[2.] In the case made in this record, if the doctrine of the Court prevails, and in all like cases, the tax will be lost to the State. Here the Sheriff sold in April. The land sold was taxable on the first of January preceding. At the time of sale, the land had not been returned to the Receiver—the Collertor knew not that it was taxable as the property of the defendant—he had no power over it—he could put in no notice to retain—he could institute no process to hold up the fund. The Sheriff, officially, could know nothing of the claim of the State for taxes. He was not restrained from paying over at once the proceeds of the sale to the judgment in his hands; and if paid, then all means of security to the State is lost forever. The Collector and his sureties would not be liable, for he could not be in default. So it would be in any case where there is a *bona fide* sale of property intervening the first of January and the return of the digest of taxes to the Collector, whether that sale be private or judicial. The consequence of this doctrine would clearly be a loss to the State of no inconsiderable amount of her revenue, and a serious injustice to the tax paying portion of the people.

In the case before me, the Collector has pursued the course which the law points out. When the tax was collectable, and default in payment made, he issued his execution—the land is levied on and sold. The question put by one of the counsel for plaintiff in error, (Col. Brown,) is conclusive of the case. If these proceedings are authorized by law, (and that they are, no one questions) *does not the purchaser get a title?* If he does not, then the State has devised an ingenious piece of statutory mechanism, for the purpose of entrapping her citizens. The previous purchaser has no right to complain, for the tax lien is by public law, and he is presumed to buy with notice.

In the argument of this cause, the defendant in error relied upon the decision of the Supreme Court of the United States in *Conrad vs. The Atlantic Insurance Company of New York*, 1 *Peters* 386. That decision places a construction on the 65th section of the Act of Congress, passed in 1799, which is as follows: "In all cases of insolvency, or when any estate in the hands of executors, administrators and assignees, shall be insufficient to pay all the debts due from the deceased, the debt or debts due to the United States shall be first satisfied; and any executor, administrator, or assignee, or other person, who shall pay any debt due by the person or estate, for whom or for which they are acting, previous to the debt or debts due to the United States from such person or estate, being first duly satisfied and paid, shall be answerable in their own person and estate, &c." The Supreme Court held, that the priority, thus limited in behalf of the United States, was not a right that superseded and overruled an assignment made by the debtor, and subjected the property so assigned to execution; but was a right of prior payment out of the general funds of the debtor, in the hands of the assignee. This decision is inapplicable to the present case. A similar provision of law is made in this State when a debtor for taxes dies between the time of giving in his taxes and the payment. A *priority* is created in behalf of the State for the tax, and the administrator is bound to respect that priority, at the peril of personal liability. *Prince*, 847. If this were the only provision of our law on the subject, the question would be very different. We should construe it as the Supreme Court did, a like law of Congress, as giving a right only of prior payment. But it is not. In the same section, the Legislature declares that the taxes shall be preferred to all securities and

incumbrances whatever. As before stated, the priority given in case of death, is cumulative, and intended to secure prompt payment of taxes. The law of Congress does not pretend to give to the United States a lien—it only pretends to create a preference in the *cases stated*, of *insolvency*, &c. It cannot be enlarged beyond its terms. Our law, in general terms, conveys a preference over all *incumbrances and securities*, and, as we think, creates a lien.

Let the judgment be reversed.