COUNTY OF MARTIN *vs.* A. M. DRAKE.

COUNTY OF MURRAY *vs.* MINNESOTA LAND & INVESTMENT COMPANY.

January 30, 1889.

**Taxability of Property fixed May 1st.**—The revenue laws of this state have fixed May 1st as the date for determining the taxability of property, and its ownership and value for purposes of taxation for the year.

**Same—Conveyances of Railway Lands.**—Hence lands of a railway company, which are exempt from taxation "until sold and conveyed," if conveyed before May 1st, are subject to taxation for the then current year. If not conveyed until after that date, they are not.

Cases certified from the district court for Martin county, *Severance*, J., presiding, and from the district court for Murray county, *Perkins*, J., presiding, in proceedings to enforce real-estate taxes. In the former case the court held the land taxable, and in the latter not taxable.

*Moses E. Clapp*, Attorney General, *T. J. Knox, F. S. Livermore* and *T. T. Smith*, for plaintiff in each case.

*Daniel Rohrer*, for defendant in each case.

MITCHELL, J. These proceedings to enforce payment of taxes on two tracts of land, one in Martin county, for the year 1885, and the other in Murray county, for 1886, are certified to this court pursuant to Gen. St. 1878, *c.* 11, § 80. Both tracts were a part of the land grant of the St. Paul & Sioux City Railroad Company, whose charter, like those of all the old "land-grant" companies, contains the familiar exemption or commutation clause, to the effect that its "land-grant" lands shall be exempt from all taxation until sold and conveyed by the company, and that the railroad and its appurtenances, and all the property of the company, shall be exempt from taxation in consideration of the payment to the state of a certain percentage of the yearly gross earnings of the road. The land in Martin county was sold and conveyed by the company to defendant Drake, April 15, 1885, and that in Murray county to defendant the Minnesota Land & Investment Company, June 17, 1886. The questions are whether

the former was subject to taxation for the year 1885, and the latter for the year 1886.

The substance of the defendants' contention is that inasmuch as the provision of the railway company's charter referred to is not an exemption of its property from taxation, but merely a substituted method of taxing it, as this court has repeatedly held, therefore the payment of this percentage of the gross earnings of the road from January 1st to December 31st of any year is a full payment of all taxes for that year on all property which the company may own at any time during the same year; and hence to tax any of it *eo nomine*, for the same year, in the hands of the company's assignee or grantee, is a violation of the legislative contract with the company, and is also illegal as being double taxation. We fail to see how this involves any violation of the contract of the state with the company. The exemption or immunity is personal to the company, and does not inhere in the property. What the state contracted was not to tax the land *in specie* while it belonged to the company, or, in the language of the charter, "until sold and conveyed." As soon as thus disposed of by the company, it becomes as fully subject to the legislative power of taxation as any other land in the state. The fallacy in defendants' argument is in the assumption that the payment by the company of this percentage of its gross earnings amounts to payment of the taxes upon all property which the company may have owned at any time during the year, regardless of its ownership at the particular date in the year fixed by law to determine its *status* for purposes of assessment and taxation. The percentage of gross earnings paid by the company is merely the equivalent of the tax *it* would have to pay had a tax *in specie* been assessed. In other words, it is a commuted payment of its own tax, and not that of somebody else.

This is equally an answer to the other objection, that it involves unequal or double taxation. Absolute equality in taxation is unattainable. It must happen under any tax law that some property will be taxed twice, while other property will escape altogether. Instances will occur where persons will have to pay tax on property which has ceased to exist. But no question of constitutional law is necessarily raised by such inequalities. They are unavoidable. All

tax laws have to fix upon some particular date in the year at which to determine the taxability as well as the ownership and value of property, for purposes of assessment and taxation. Our revenue laws have fixed this at the 1st of May. Gen. St. 1878, *c.* 11, §§ 6, 24, 105. Personal property is assessed and taxed with regard to both its value and ownership at that date. Real estate is assessed according to its value at that date, and the state has a lien for the tax from that date. Every man must pay taxes on what he then owns, and at its then value, no matter how short a time he may have owned it, or how soon thereafter it is lost. All property, if in being as taxable property at that date, is liable to taxation for that year at its then value, although it may only have come into being the day before, and may be in whole or in part destroyed the day after. Under this system, defendant Drake may have to pay for the year 1885 as much tax on land which was only subject to taxation *in specie* from and after April 15th as his neighbor will on land that was liable to such taxation the whole year; but, as already remarked, this is one of the inequalities that are unavoidable. It results in no double taxation against him. He has to pay no tax on the money or other consideration which he paid for the land, as he would have had to do had he retained it until May 1st. If defendants' contention is sound, it necessarily and logically leads to absurd results. Suppose on January 1st the railway company should sell to A. some of its personal property for $1,000 cash. A. would not have to pay any tax for that year on the $1,000, because he had parted with it before May 1st, and, according to defendants' theory, he could not be taxed on the personal property, because the 3 per cent. of its gross earnings paid by the company paid all taxes on it for that year. Any logic that leads to such results must be unsound.

We are referred to the provisions of Gen. St. 1878, *c.* 11, § 118, (as amended in 1881,) requiring the state auditor, on or before April 1st in each year, to obtain lists of all government and railroad lands becoming taxable, and on or before April 15th to certify the same for taxation to the county auditor; also to section 141 of the same chapter, requiring the land-grant railroad companies, on or before April 1st in each year, to return to the railroad commissioner a full

list of all lands sold or contracted to be sold during the year ending the last of the preceding December. It is claimed that this shows a clear legislative intention that lands sold and conveyed by a railroad company during any year shall only be listed for taxation the next ensuing year, and then only upon the certificate of the state auditor. The statute does not say so. It is a mere matter of argument or inference, which has no weight as against the express and fixed policy of our revenue laws, making May 1st the date for determining the ownership and value of property for purposes of taxation. The failure of the railroad companies to return these lists, or of the state auditor to certify them, or the mistakes of either in doing so, cannot affect the taxability of the land. The lists of lands sold or contracted, required to be furnished by the companies, may be designed to aid the state auditor in making his lists for the county auditors, but he is not confined to that source of information ; and the lists certified by the state auditor to the county auditors are doubtless intended to aid the latter in making up the assessment-rolls, but neither of these lists have any effect in determining the taxability of property.

We are referred to the case of *County of Hennepin* v. *St. Paul, M. & M. Ry. Co.*, 33 Minn. 534, (24 N. W. Rep. 196,) in which it was held that lands purchased by the defendant company in July were not subject to taxation *in specie* for that year. We shall neither review nor reconsider the correctness of that decision, but merely suggest that it furnishes no aid to the defendant here. Our conclusion, therefore, is that the land in Martin county, having been sold and conveyed prior to May 1st, was subject to taxation for the then current year of 1885. The same line of reasoning that has led us to this result leads, in our judgment, necessarily and logically to the conclusion that the land in Murray county, not having been sold and conveyed until after May 1, 1886, was not taxable *in specie* for that year. On the 1st of May, the time at which the value of the land for the purpose of taxation, and by clear implication, at least, its taxability, is fixed by statute, this land was entirely exempt from such taxation. It was, for any such purpose, as if not then in existence. See *Long* v. *Culp*, 14 Kan. 412. The confusion that would follow, and the inequality of taxation, often amounting to double taxation,

that would result, from any other construction of the statute, is a strong argument against its adoption. Land conveyed after May 1st, if taxed for that year, would, under the statute, have to be assessed, if at all, at its value, not at the time the purchaser bought it, but on May 1st, while still the property of the railroad company and hence exempt; and, if land conveyed in June might be taxed for that year, so might land conveyed in December. To do so would in our judgment be utterly inconsistent with the clearly expressed meaning and policy of the tax law. The result is that the judgment of the court below in each of these proceedings is affirmed.