Submitted on briefs November 5, affirmed December 16, 1924.

# W. C. LOGAN v. JOHN LUUKINEN AND WALTER HARRISON.

### (231 Pac. 184.)

**Landlord and Tenant — Contract Which by Reference Provided Method of Ascertainment of Additional Rental Through Payment of Taxes Held Valid.**

1. Where tenants, in addition to named monthly rental, agreed to pay taxes in excess of named sum, and lease by reference provided method of determining sum to be paid and could make certain that which at time of execution was uncertain, it was valid.

**Evidence—Provision That Tenants Would Pay Excess Taxes Over Named Sum Held Unambiguous.**

2. In view of tax laws (§§ 4268, 4275, 4292, 4296, 4300, 4301, 4325, Or. L.), under which property is assessed and becomes lien thereon from date certain in year of levy, lease provision that tenants were to pay taxes in excess of named amount was unambiguous, and parol evidence that tenants were to pay excess amount only if landlord paid taxes during life of lease was inadmissible.

**Taxation—Lien Declared by Statute from Certain Day is Encumbrance Though Amount Thereof Undetermined.**

3. When statute declares lien from certain day, it is encumbrance, although amount of tax may not yet be determined or collectible.

See (1) 36 **C. J.** 114.    (2) 22 **C. J.** 1131.    (3) 37 **Cyc.** 1142.

From Clatsop: J. A. EAKIN, Judge.

In Banc.

AFFIRMED.

For appellants there was a brief over the name of *Messrs. Norblad & Hesse.*

For respondent there was a brief over the name of *Messrs. G. C. & A. C. Fulton.*

2. Construction and effect of covenants in lease, sublease or assignment of lease as to payment of taxes and assessments, see note in **L. R. A.** 1915A, 334.   See, also, 16 **R. C. L.** 813.

PIPES, J.—The respondent, on January 1, 1920, leased to the appellants two lots in the City of Astoria for a term ending January 1, 1923. The first clause of the lease, which is the clause here in dispute, is as follows:

"The second parties [appellants] agree to pay to the first party [respondent] as rental for said premises during said term the sum of Six Hundred and Fifty Dollars ($650.00) per month during each and every month during said term, in advance on the first day of each and every month, and, in addition thereto, in case the taxes for state, county, municipal and other purposes upon said lands and tenements shall during any year during the life of this lease exceed the sum of $1,000.00, then, in each and every of such events, the second parties agree to pay the first party the total of such excess, the same to be paid the first party by the second parties on the first day of the month following the payment thereof by said first party."

The appellants went into possession of the premises under the lease and continued until December 8, 1922, when the buildings on the land were destroyed by fire. Under the terms of the lease it was terminated by the fire. In March, 1923, after the termination of the lease, the respondent paid to the sheriff the taxes which had been levied against the property, in the sum of $3,490.93. Deducting $1,000, as provided in the first clause of the lease heretofore quoted, respondent brings this action to recover from the appellants the sum of $2,490.93.

The appellants, claiming that the clause heretofore quoted was ambiguous, offered evidence to prove that the parties had an understanding with each other that the clause meant that the lessees were only to pay the excess of the taxes over $1,000 in the year when the respondent paid the taxes, and by that evidence

they sought to show that the true meaning of the clause did not oblige them to pay the sum claimed, or any part thereof, because the payment was made after the termination of the lease.

The court held that the clause was not ambiguous, and rejected the evidence, and, the appellants resting, upon motion of respondent, the court directed the jury to find a verdict in the sum of $2,490.93, less a rebate of $639.26 offered by the complaint of the respondent. This rebate consisted of a rebate on the cash rental of $650 per month for twenty-three days unearned in December, from the date of the fire until the date of the termination of the lease, amounting to $482.31, and also a rebate on the amount of taxes for the same period, amounting to $156.95. The jury returned a verdict, as directed, for the sum of $1,851.67. From the judgment entered upon the verdict returned by the jury under the direction of the court the appellant's appeal, assigning as errors the rejection of the evidence offered and the instructions of the court directing the verdict.

It appears from the transcript that the parties operated under a previous lease on one of the lots, running from January 1, 1917, to January 1, 1919. The appellants offered evidence tending to prove a conversation between the parties concerning the construction of a similar clause in that lease, and that the understanding was that the appellants were to pay only the excess of taxes actually paid by the respondent during any term that the lease was in existence, and that evidence was rejected by the court and the ruling assigned as error.

The ultimate question presented by this record is whether the clause in dispute was in fact ambiguous. If its meaning was clear, then this evidence to contradict such meaning was properly rejected and,

there being no dispute at the trial that the respondent had paid the taxes charged against the property in March, 1923, and no dispute that the appellants had not paid him any part of the excess of such taxes over $1,000, the court properly instructed the jury to find a verdict.

If the clause in dispute contains a clear promise by the appellants to pay a sum equal to the excess over $1,000 of the taxes that became a charge against the property during the life of the lease, then the appellants were liable to pay to the respondent such excess, although the taxes were not due and were not paid until the March following the termination of the lease. If the taxes paid in March, 1923, had, before the lease ended, become a charge upon the property, they were the taxes upon the property during the year 1922, within the meaning of the controverted clause.

1. The nature of the promise is clear in one respect. The appellants did not agree to pay the taxes to the tax collector. They were charged with no duty to forestall a delinquency or to guard the property from a tax sale. The lessor kept that matter in his own hands and was himself to pay the taxes. What the lessees, in fact, promised was to pay their landlord some rent additional to the $650 per month prescribed in the lease, if the taxes amounted to more than $1,000 in one year. The rent to be paid is coextensive with the life of the lease. It begins and ends with the lease. But the payment of it may be made afterwards. The taxes, therefore, upon the property were only to be the measure of the additional rent, if any, to be paid. What this rent was could not be known at the time the lease was executed. The contract, therefore, by reference to the "taxes upon the property" provides the method of determining the sum

to be paid. The object of that reference was to make that certain which at the time of the execution of the lease was uncertain. Such a contract is valid.

" * * The principle governing is: When the contract points the mode of determining the price, and the price is determined according to that mode, the contract becomes perfect and complete in all respects, as if it had been originally fixed in the writing. *Norton* v. *Gale,* 95 Ill. 533 (35 Am. Rep. 173)." *Hayes* v. *O'Brien,* 149 Ill. 403 (37 N. E. 73, 23 L. R. A. 555, 560).

It was not necessary to the perfection or completion of the contract under this rule that the amount of the taxes should be fixed within the term. It will be sufficient if it appears that the taxes finally fixed by a levy were taxes upon the property charged during the life of the lease.

2. Is the clause in dispute in fact ambiguous? That question is not answered by considering only the words of the clause. The clause itself must be read in connection with the context of the lease of which it is a part, and if this context clarifies the meaning it is not ambiguous. If the clause is cleared of doubt by the intrinsic evidence of the contract itself, extraneous evidence cannot be used to explain or contradict it.

The clause refers to "taxes * * upon said lands and tenements." That makes the taxing law of the state as much a part of the contract as if it had been incorporated therein. The parties contracted with reference to this law, and it may be looked to, to discover what they meant by the clause.

The procedure for taxation established by this law provides that the assessor of each county assesses all of the property in this county except such as by law is otherwise assessed. This means that he values

the property, and this valuation is to be made as of the first day of March, at the hour of 1 o'clock A. M. This is the first step in raising by taxation the money necessary for the support of the government. Before the second Monday in September he enters the assessments, with the names of the owners, on a roll: Section 4268, Or. L.

The roll, among other things, must contain the names of all taxable persons assessable by the assessor, and descriptions of the property assessed: Section 4275, Or. L.

A board of equalization meets on the second Monday of September, to examine and correct the assessor's roll: Section 4292, Or. L.

The board must complete its work within one month: Section 4296, Or. L.

The County Court at its December term then estimates the amount of money to be raised and levies the tax necessary to raise it on the property: Sections 4300, 4301, Or. L.

The taxes are a lien upon the property assessed, from the first day of March in the year in which the levy is made: Section 4325, Or. L.

This is an outline of the principal steps in the process of taxation, and is sufficient, omitting many details, to indicate what the parties meant by the words "taxes * * upon said lands and tenements" in the disputed clause. These words must have meant such taxes as by virtue of those provisions would become taxes upon the property during the life of the lease. The determination of their amount was necessarily referred to the tax proceedings. These proceedings fixed that amount before the payment of it was required.

As soon, therefore, as the tax records disclosed the amount of taxes charged against the property

during the life of the lease, the extent of the lessees' obligation became fixed with the same legal effect as if the amount had been known and fixed in the lease.

The levy made by the County Court at the December term fixes the amount of the taxes. But under the taxing law the charge upon the property is not of that date. Section 4325, Or. L., declares that "the taxes assessed upon real property shall be a lien thereon from and including the first day of March in the year in which they are levied until the same are paid."

The levy of taxes on all taxable property is certain and regular as sunrise. The law foreordains it. In the interval required for the valuation and listing of the property, and the equalization of the taxes, the state covers the property with the lien. When the taxes are fixed in December they are within the lien by relation, as of the first day of March preceding. The lien is paramount over all other liens, and is an encumbrance, and is notice to everybody.

3. The rule supported by the authorities is that, when the statute declares a lien from a certain day, the lien is an encumbrance, although the amount of the tax may not yet be determined or collectible. When determined, the lien dates by relation from the date fixed by the statute: *Cochran* v. *Guild,* 106 Mass. 29 (8 Am. Rep. 296); *Hill* v. *Bacon,* 110 Mass. 387; *Gledney* v. *Deavors,* 8 Ga. 479; *McLaren* v. *Sheble,* 45 Mo. 130; *Cowell* v. *Washburn,* 22 Cal. 519; *Reeve* v. *Kennedy,* 43 Cal. 643; *McClure* v. *Campbell,* 25 Neb. 57 (40 N. W. 595); *Amory* v. *Melvin,* 112 Mass. 83; *Terry* v. *Lucas,* 123 N. Y. Supp. 770; *Wilkinson* v. *Libbey,* 1 Allen, 375; *Strohmeyer* v. *Zeppenfeld,* 38 Mo. App. 268.

Under the former law in this state the lien was established from and including the date on which

the warrant authorizing the collection of the taxes was issued. It was held under that statute that the lien created by the statute was paramount to a lien for city street assessments: *Studley* v. *Luse,* 89 Or. 338 (173 Pac. 1182).

It is clear to us from these considerations that the taxes here disputed were a charge upon this property from the first day of March, 1922, and that they were, therefore, ''taxes * * upon said lands and tenements'' during the life of the lease and during the last year of the lease. The clause is clear and the evidence to explain it was properly rejected.

It was not contradicted that the taxes were paid by the respondent in March; that they were legally levied against the property, and that the appellants have not paid any part of them to the respondent. The directed verdict was therefore proper.

There being no error, the judgment is affirmed.

AFFIRMED.