## KATE FOWLER MERLE-SMITH AND ANOTHER v. MINNESOTA IRON COMPANY.[1]

October 25, 1935.

No. 30,528.

*Crassweller & Crassweller, Elmer F. Blu,* and *Kellogg, Morgan, Chase, Carter & Headley,* for appellant.

*A. L. Agatin,* for respondents.

HOLT, JUSTICE.

In overruling a demurrer to the complaint the court certified the question presented to be important and doubtful. Defendant appeals.

The allegations in the complaint necessary for an understanding of the question presented by the appeal are, in brief: Plaintiffs are the successors to the lessors in a mining lease wherein defendant is the lessee. The lease began April 1, 1914, and was to end on December 31, 1951. The lessee covenanted to pay as rent a royalty of

[1]Reported in 262 N. W. 865.

50 cents a ton upon all ore mined, removed, and shipped, and to pay such royalty upon a specified minimum tonnage whether mined or not. Payments of the royalty were required quarterly on the 20th day of July, October, January, and April of each year during the continuance of the lease. The lessee was given the right to end the lease by giving six months' notice, and by such notice the lease ended on August 14, 1933. The complaint avers that the lessee failed and refused to pay the taxes assessed against the demised land for 1933 as it had covenanted to do and that plaintiffs were compelled to pay the same, and judgment is asked for the amount so paid. The covenant as to taxes reads:

"The Lessee agrees to pay before delinquency all taxes and assessments, ordinary or extraordinary, general or specific, that may be assessed against said lands and the improvements thereon, or the iron ore products thereof, or any personal property at said mine or mines, during the continuance of this lease, except the taxes for 1914 upon said Lot Two (2) of Section Six (6), which the Lessors agree to pay, and to furnish to the Lessors a duplicate receipt therefor, duly signed by the officer lawfully authorized to collect and receipt for such taxes; but nothing herein contained shall prevent the Lessee from contesting in the courts or otherwise the validity or amount of any such taxes or assessments, provided that it shall pay the same before said lands and property, or any part thereof, are offered for sale on account of said taxes, the Lessee to notify the Lessors of its intention to contest the validity or amount of any such taxes or assessments."

The decision must turn upon what the parties to the lease meant by the phrase "all taxes * * * that may be assessed against said lands * * * during the continuance of this lease." The contention of plaintiffs is that for each year taxes are laid upon land as of May 1, and that when the process of taxation is completed and the county auditor turns over to the county treasurer the books or lists wherein the taxes against each description of land have been inserted the assessment relates back and becomes a lien or charge upon the land as of May 1; hence, since this lease

ended after May 1, *viz.* August 14, the land was assessed for the year 1933 during the life of the lease and the lessee should pay the taxes for that year.

Defendant contends that since the taxes on real estate are not finally ascertained and definitely fixed until the tax lists are delivered by the county auditor to the county treasurer, it cannot be said that taxes thereon are assessed until the time fixed by law for that act. 1 Mason Minn. St. 1927, § 2074, provides that on or before the first Monday in January the county auditor shall deliver to the county treasurer these tax lists, and "such lists shall be authority for the treasurer to receive and collect taxes therein levied." The process of taxing real estate takes time and consists of different steps of several officers and official bodies. It starts with the making and delivery of the assessment books by the county auditor to the assessors. This must be done before the third Monday in April (§ 1986). The work of the assessors must be completed in May and June and the books or lists returned to the auditor before the first Monday in July. There are provisions for the review of such assessment by the county board of equalization, and there may be action of the state tax commission required. After all steps have been taken to fix and determine the value of the taxable real estate in the county, the auditor must be notified on or before October 10, by the proper authorities of the state, county, and municipalities, of the levies for the year. Thereupon the auditor must apportion such levies to the several tracts of land upon the tax lists or books and deliver the same to the county treasurer on or before the first Monday of January, as above stated. This final step is not taken until the year for which the taxes are assessed has expired. Hence defendant claims the 1933 year's tax was not assessed against the land here involved during the life of the lease.

Property, unless exempted, is subject to be taxed for each calendar year in this state. The tax is for the whole year. The value is to be fixed as of May 1. And the first step in respect to taxation is to assess or determine the value as of that date. Any subsequent modification by boards of equalization or the state tax commission

must fix the value as of that date. When finally the tax lists are reviewed and corrected and the tax computed and apportioned to each tract under the levies made, the final step in the taxing process is turning over these lists to the county treasurer for collection. 1 Mason Minn. St. 1927, § 2191, reads:

"The taxes assessed upon real property shall be a perpetual lien thereon, and on all structures and standing timber thereon and on all minerals therein, from and including May 1 in the year in which they are levied, until they are paid; but, as between grantor and grantee, such lien shall not attach until the first Monday of January of the year next thereafter."

It is clear from these provisions of the statutes that while the process of arriving at the taxes assessed on real property is long, extending almost from the beginning of the year and ending the first Monday of January the next following, still the result of it all is to lay a tax on May 1 for the whole year upon the property as its value was on that day. Thereby a charge is from that day made a perpetual lien upon the land. There can be no fair doubt that it was this charge or lien the parties had in mind when the covenant above quoted was inserted. And we dare say no controversy would ever have arisen concerning *ad valorem* taxes had defendant chosen to end the lease on December 31, 1933. Defendant, however, asserts that the last clause of § 2191 throws the burden on plaintiffs. Conceding, for the purposes of this decision, that the option to end the lease, given to defendant, becomes a grant, when exercised, it is clear to us that the parties by the covenant intended not to be bound by this provision of the statute. They undertook to contract as to the payment of taxes as between themselves. They did so as to the first year of the lease beginning April 1, 1914, the lessors agreeing to pay the taxes for that year upon one of the three parcels demised, and, of course, under the general covenant of the lessee to pay all taxes during the term, it did so as to the other parcels.

We think the defendant is right, that the lease, speaking of taxes assessed during its course, means the taxes as finally determined

upon the tax lists or books turned over to the county treasurer. But, under the statute, the taxing process, when complete, relates back to May 1 when the result of the assessment is made a charge or lien upon the property, and as of that day the taxes for the year may be truly said to be assessed, and we think this is the meaning of the word "assessed" according to the intention of the parties in this lease.

Defendant from our decisions cites as supporting its contention McCormick v. Fitch, 14 Minn. 185 (252); Webb v. Bidwell, 15 Minn. 394 (479); Craig v. Summers, 47 Minn. 189, 49 N. W. 742, 743, 15 L. R. A. 236; Eide v. Clarke, 57 Minn. 397, 59 N. W. 484; Nelson v. Becker, 63 Minn. 61, 65 N. W. 119; Marble v. Oliver I. Min. Co. 172 Minn. 263, 215 N. W. 71; Day v. Inland Steel Co. 185 Minn. 53, 239 N. W. 776. When the first two cases mentioned were decided we had no statute making the assessed taxes attach as a lien or charge upon real property on a fixed date. Eide v. Clarke, 57 Minn. 397, 59 N. W. 484, and Nelson v. Becker, 63 Minn. 61, 65 N. W. 119, show that the word "assessed" as used in statutes does not invariably mean the date upon which the last step in imposing the taxes on real property is taken. Craig v. Summers, 47 Minn. 189, 49 N. W. 742, 15 L. R. A. 236, furnishes argument for both parties. It is true that, since the court held defendant had taken an assignment and not a sublease of the premises for the term ending January 1, 1890, and there was a continuation of the term until in April, 1890, the situation presented was not exactly like the one at bar. Furthermore, the last clause in what is now § 2191 of the Code attached the lien for taxes as between grantor and grantee on January 1 and not on the first Monday of January. But, as stated in the Craig case [47 Minn. 191], "the arbitrary statutory rule fixing the date of liability of grantees has nothing to do with the question here considered," for the parties here stipulated as to their obligation to pay taxes, thus clearly indicating that they did not wish the statutory rule to govern.

As indirectly sustaining the view we take of this covenant as to taxes assessed during the continuance of the lease, viz., that the lessee agreed to pay the taxes for the calendar year in which they,

during the life of the lease, attached as a lien on May 1, we may cite County of Martin v. Drake, 40 Minn. 137, 41 N. W. 942; State v. Bellin, 79 Minn. 131, 81 N. W. 763; State v. N. W. Tel. Exch. Co. 80 Minn. 17, 82 N. W. 1090; State v. Rea, 189 Minn. 456, 250 N. W. 41. From other jurisdictions sustaining the view we take of this covenant may be cited Blythe v. Gately, 51 Cal. 236; Morrison v. Moir Hotel Co. 204 Ill. App. 433; Koshland v. American Woolen Co. (Mass.) 194 N. E. 102, annotated in 97 A. L. R. 928; Logan v. Luukinen, 113 Or. 52, 231 P. 184; Ward v. Union Trust Co. 224 N. Y. 73, 120 N. E. 81, 3 A. L. R. 1154. In New York, when the covenant to pay taxes by the lessee was involved, the statute was that one-half of the taxes on real estate were due and payable on the first day of May and the remaining one-half on the first day of November, and "all taxes shall be and become liens on the real estate affected thereby on the respective days when they become due and payable as hereinbefore provided and shall remain such liens until paid." The tenant continued in possession until noon of May 1, 1914, the end of the lease, but refused to pay the one-half of the taxes for 1914 which fell due on that date. The court held the lessee liable under the covenant to pay the annual taxes imposed during the term which fell due on the first day of May and at that moment became a lien although all the steps in the assessment had not then been taken. Defendant cites Gokey v. Gokey, 230 App. Div. 563, 245 N. Y. S. 518, 519, 521. The taxes there involved were imposed under the city charter of Jamestown. No statement is made of any provision as to when the taxes assessed should become a lien, and the lessor conceded that the city tax "was levied and assessed" on December 4, 1925, and the school tax "was levied and assessed" on January 25, 1926, the lease expired November 12, 1925, and it was held the lessee was not liable under the covenant "to pay all taxes which were levied or assessed upon said property, or any part thereof, during said term."

With the privilege reserved by the lessee to terminate the lease at any time, it was within its power to escape the obligation to pay the taxes for any year by terminating the lease prior to the first day of May thereof. This is no ordinary lease. It bears evidence

of being drawn by skilled lawyers. It must be assumed that the parties in contracting with reference to taxes had in mind the statute as to when the taxes attach and become a lien against the land. They clearly contracted that as between them the last clause in § 2191 should not govern.

The order is affirmed.