BODEL CORPORATION v. STATE.

82 N. W. (2d) 703.

April 26, 1957—No. 36,987.

*Miles Lord,* Attorney General, and *Victor J. Michaelson,* Assistant Attorney General, for appellant.

*Cant, Taylor, Haverstock, Beardsley & Gray* and *Fred Clausen,* for respondent.

Dell, Chief Justice.

Plaintiff brings this action to quiet its title to the mineral rights in certain parcels of land against the claims of the defendant, the State of Minnesota. The defendant claims that it has a tax lien upon the land, including the mineral rights, for taxes assessed for the year 1931, with interest thereon. Defendant appeals from a summary judgment in favor of the plaintiff.

The facts are undisputed. On May 1, 1931, the Mid-State Land Company was the record owner of the entire fee of a certain parcel of land[1] located in Itasca County. On October 19, 1931, said corporation conveyed to the Bovey-DeLaittre Lumber Company, plaintiff's predecessor, the following interest in the parcel:

"* * * all mineral, mineral earth, ores, rocks, gravel, oils, and other similar substances or materials upon or beneath the surface * * *:

* * * * *

"Together with the exclusive and perpetual right, power and privilege, free and without liability for trespass or damage of any kind in so doing, of entering upon any part of said described lands, and of erecting thereon, and removing therefrom, buildings, derricks and other appliances or instrumentalities; of constructing drains and ditches, and building tramways, roads and spur tracks for exploring for, mining and removing any such ores, minerals, mineral earth, rocks, gravel, oil or similar substances; and of sinking shafts in, boring, stripping or sinking the surface of, said land for any of said purposes."

[1]The facts relating to the various parcels of land described in the complaint are identical for the purposes of this action.

For convenience this interest will be referred to as the "mineral interest."

On October 20, 1931, the Mid-State Land Company conveyed the same parcel, excepting the interest previously conveyed, to the Bovey Investment Company. This interest will be referred to as the "surface interest." Both deeds were presented to the county treasurer and county auditor, and their respective certificates[2] were endorsed on each as follows:

"I hereby certify that the taxes for the year 1930 on the lands described within are paid.

"Emil S. Ostrom,
County Treasurer
By T. C. Dragee Deputy"

"Taxes Paid and Transfer entered this 7 day of Nov. A. D. 1931.

"Thomas Erskine
Auditor, Itasca County
By W. N. Marr
Deputy"

Thereafter the deeds were recorded and certificates of title issued for each.

In the tax list prepared by the county auditor for real estate taxes for the year 1931, which list was delivered to the county treasurer as required by law on the first Monday in January 1932, the parcel involved is described by government subdivision only. The list indicates that the parcel was assessed in the name of the "Mid-State Land Co." and transferred to the "Bovey Inv. Co.," the grantee of the surface interest of the parcel. The name of the Bovey-DeLaittre Lumber Company, the grantee of the mineral interest, does not appear on the tax list. Real estate taxes on this parcel for the year 1931 and subsequent years were not paid, and a sale of the surface interest was held pursuant to a real estate tax judgment

[2]Certificates by the county treasurer and county auditor with respect to delinquent taxes are required by M. S. A. 272.12 and 272.13. With certain exceptions, instruments conveying land cannot be recorded without the required certificates being endorsed thereon.

for delinquent taxes for the year 1931. Appropriate memorials were subsequently entered upon the certificate of title for the surface interest. However, the mineral interest in the parcel has never been listed separately, assessed a value for taxation purposes, nor separately taxed.

■ The defendant contends that it has a real estate tax lien upon the plaintiff's interest for the taxes assessed for the year 1931. The only question involved is whether the mineral interest acquired by the plaintiff's predecessor on October 19, 1931, was, under the facts of this case, subject to a tax lien for the 1931 real estate taxes.

Under our taxing procedure, real property is listed and its value assessed as of May 1.[3] Thereafter the county auditor spreads the tax levies against the assessed value[4] and, on or before the first Monday of January of the following year, delivers the lists to the county treasurer for collection,[5] at which time the taxes become due and payable.[6] However, it is well settled that the taxability of real property as well as its value is determined as of May 1 of the tax year.[7] In addition, M. S. A. 272.31 provides:

"The taxes assessed upon real property shall be a perpetual lien thereon, and on all structures and standing timber thereon and on all minerals therein, from and including May first in the year in which they are levied, until they are paid; but, as between grantor and grantee, such lien shall not attach until the first Monday of January of the year next thereafter."

[3]Section 273.01 provides in part:

"All real property subject to taxation shall be listed and assessed every even-numbered year with reference to its value on May first preceding the assessment, and all real property becoming taxable any intervening year shall be listed and assessed with reference to its value on May first of that year."

[4]See, § 275.08.

[5]See, § 276.01.

[6]Hoyt v. Chapin, 85 Minn. 524, 89 N. W. 850; State v. Sage, 75 Minn. 448, 78 N. W. 14.

[7]See, Merle-Smith v. Minnesota Iron Co. 195 Minn. 313, 262 N. W. 865; 18 Dunnell, Dig. (3 ed.) § 9195.

It has been held, and properly so, that, because of the relation back of the tax lien to May 1, transfers of land subsequent to that date cannot divest the land of the lien.[8] As was said by Mr. Justice Mitchell in County of Martin v. Drake, 40 Minn. 137, 139, 41 N. W. 942:

"* * * All tax laws have to fix upon some particular date in the year at which to determine the taxability as well as the ownership and value of property, for purposes of assessment and taxation. Our revenue laws have fixed this at the 1st of May. * * * Real estate is assessed according to its value at that date, and the state has a lien for the tax from that date. Every man must pay taxes on what he then owns, and at its then value, no matter how short a time he may have owned it, or how soon thereafter it is lost. All property, if in being as taxable property at that date, is liable to taxation for that year at its then value, although it may only have come into being the day before, and may be in whole or in part destroyed the day after."

The defendant contends, therefore, that despite the separation of the surface and mineral interests after May 1 the entire parcel remained subject to the tax lien.

Plaintiff, on the other hand, relies upon § 272.16, one of several so-called "relief statutes,"[9] which provides:

"When any part less than the whole of any parcel of land, as charged in the tax lists, is conveyed, the county auditor shall transfer the same whenever the seller and purchaser agree, in a writing signed by them, or personally appear before the county auditor and agree, upon the amount of the assessed valuation to be transferred therewith; but, if the seller and purchaser do not so agree, the county auditor shall make such division of the assessed valuation as may

[8]State v. Northwestern Tel. Exch. Co. 80 Minn. 17, 82 N. W. 1090; County of Martin v. Drake, 40 Minn. 137, 41 N. W. 942, in effect overruling County of Hennepin v. St. Paul, M. & M. Ry. Co. 33 Minn. 534, 24 N. W. 196; see, 18 Dunnell, Dig. (3 ed.) § 9161.

[9]See, also, e. g., § 272.14, permitting the transfer of an undivided part upon payment of the proportionate part of taxes due thereon.

appear to him just. If the county auditor is satisfied that the proportion of the valuation so agreed to be transferred is greater than the proportional value of the land to be transferred therewith, and that such agreement was made by collusion of the parties, and with a view fraudulently to evade payment of taxes assessed on the entire parcel, he may refuse to make such transfer; and, when any such transfer has already been procured by fraudulent agreement, he shall cancel the same, and the land so transferred shall be charged with taxes in the same manner as though the transfer had not been made."

This statute obviously refers to transfers occurring after May 1 inasmuch as it assumes that the value of the property has been assessed and the land charged in the tax lists. Taken in conjunction with § 281.11[10] it would appear that § 272.16 also refers to conveyances of less than the whole parcel even after taxes have been assessed. Properly applied, § 272.16 does not defeat the tax lien nor is it inconsistent with the rule that the taxability of real property is determined as of May 1 and that the tax lien relates back to that date. The section merely sets up a procedure whereby the assessed valuation of the property may be apportioned upon a division of the land after May 1. The tax lien is likewise apportioned. If the apportionment is correctly made, the taxes assessed will remain fully protected by the liens on the respective parts of the parcel. The statute specifically provides that, if collusion is involved in apportioning the value of the land for the purpose of avoiding payment of assessed taxes, the transfer may be refused or, if already made, set aside. The meaning and purpose of § 272.16 seems clear, namely, to permit an apportionment of the assessed valuation of the property for the purpose of rendering a severed part of the land liable only for its fair proportion of the taxes assessed. The procedure neither reduces the amount of the taxes assessed against the entire parcel nor the extent of the lien. It merely divides both in accordance with the

[10]This section permits a person "holding an interest in a tract of land which forms a part less than the whole of a tract of land as listed for taxation" to pay the proportionate amount of the taxes assessed and thereby exempt the interest from forfeiture proceedings.

proportionate values involved. To adopt the defendant's contention that the lien attaches to the entire parcel despite a subsequent division of the land would render § 272.16 meaningless.

■ The defendant, however, argues (a) that the phrase "any part less than the whole" as used in § 272.16 does not apply to the division of interests involved in the instant case; and (b) that the county auditor has no power to make a division of the assessed valuation of the parcel here involved. Whether the interests conveyed fall strictly within the technical meaning of "mineral rights" or "surface rights" is immaterial. The extent of the particular mineral interest conveyed would affect the proportion of the assessed value transferred with it but could have little bearing on whether such an interest is within the purview of § 272.16. It is well recognized that interests of the type here conveyed are separate interests in real estate, and may be conveyed, assessed, and taxed separately.[11] This recognition of the feasibility of separately taxing and assessing a mineral interest is, in itself, persuasive that such an interest constitutes "any part less than the whole" as that phrase is used in § 272.16. The defendant's contention that "part" refers exclusively to a fixed geographical quantity[12] places an unwarranted limitation on the language of the statute which, because of its remedial nature, should be liberally

[11]Section 272.04 provides:

"When any mineral, gas, coal, oil, or other similar interests in real estate are owned separately and apart from and independently of the rights and interests owned in the surface of such real estate, such mineral, gas, coal, oil, or other similar interests may be assessed and taxed separately from such surface rights and interests in such real estate and may be sold for taxes in the same manner and with the same effect as other interests in real estate are sold for taxes."

Mineral rights were recognized as separate interests and were taxable separately even prior to the passage of this statute in 1905 (L. 1905, c. 161, § 1). Washburn v. Gregory Co. 125 Minn. 491, 147 N. W. 706, L. R. A. 1916D, 304.

[12]"Specific part" as used in § 281.08 (redemption of forfeited land) has been said to refer to "any portion of the parcel sold having a definite geographical boundary." State ex rel. Central Hanover B. & T. Co. v. Erickson, 212 Minn. 218, 223, 3 N. W. (2d) 231, 234. It is apparent from a reading of that case, however, that the court did not necessarily intend the definition to be an exclusive one.

construed.[13] Our conclusion in this regard is expressly limited to the interest involved under the facts of this case, and should not be construed as defining other types of interests which may or may not fall within the scope of § 272.16.

The defendant also points out that, if "any part" includes mineral interests, the county auditor will be required, in effect, to make an "assessment" of the value of that interest, a power which the defendant claims he does not have. While the determination of the value of a mineral interest will usually require more than mere mechanical computation, similar difficulty will frequently be experienced in dividing the assessed valuation in cases of geographical divisions of land. If the division of assessed valuation required under § 272.16 calls for the exercise of discretion on the part of the county auditor, the section, by implication, gives him that power.[14] The authorities cited by the defendant to the effect that the auditor has no power to make an assessment are distinguishable on their facts.

■ Finally, the defendant contends that no division of the assessed valuation was, in fact, made by the county auditor. Both of the deeds were presented to the county treasurer and the auditor who endorsed their respective certificates on each of the deeds as required by statute.[15] Inasmuch as the deeds conveyed a part less than the whole, presumptively the auditor made the transfer only after complying with the provisions of § 272.16.[16] There is no evidence tend-

[13] 17 Dunnell, Dig. (3 ed.) § 8986.

[14] The problem has been obviated in part by § 272.161, enacted by L. 1949, c. 619, § 1, which provides in part:

"In the event the seller and the purchaser fail to file the agreement as prescribed by Minnesota Statutes 1945, Section 272.16, the county auditor of any county may, before making a transfer of a specific part of any tract assessed, request the assessment supervisor or the county assessor to determine the amount of assessed valuation to be transferred therewith."

[15] See footnote 2, *supra*.

[16] See Washburn v. Gregory Co. 125 Minn. 491, 495, 147 N. W. 706, 708, L. R. A. 1916D, 304, where we said:

"* * * It is to be presumed that the taxing officers intended to follow the law."

See, also, 7 Dunnell, Dig. (3 ed.) § 3435.

ing to rebut this presumption. To the contrary, the tax list reflects the transfer to the Bovey Investment Company, the grantee of the surface interests,[17] while no indication of the transfer to the plaintiff's predecessor is noted. This evidence can support but one conclusion, namely, that the auditor transferred the entire assessed value with the surface interest. If the surface interest was thereafter found to be insufficient to satisfy the delinquent taxes, the difficulty lies in the adequacy of the division of the assessed valuation, which issue is not involved in this controversy.

In view of the foregoing determinations, we must conclude that the plaintiff's predecessor took the mineral interest free of the defendant's tax lien.

Affirmed.

---

[17]Where there has been a separation of interests, description by governmental subdivision only does not include mineral interests. See, Campbell v. Barry, 152 Minn. 13, 187 N. W. 967; Washburn v. Gregory Co. 125 Minn. 491, 147 N. W. 706, L. R. A. 1916D, 304.