RAILWAY EXPRESS AGENCY, INC. v.
COMMISSIONER OF TAXATION.

239 N. W. 2d 245.

February 20, 1976—No. 45434.

*Warren Spannaus,* Attorney General, and *C. H. Luther,* Deputy Attorney General, for relator.

*Johnson & Eastlund, Geo. R. Johnson,* and *Ralph W. Peterson,* for respondent.

Heard before Rogosheske, Yetka, and Scott, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Certiorari to the Tax Court to review its order entered October 10, 1974, granting taxpayer's requested relief. Respondent-taxpayer, Railway Express Agency, Inc. (REA), an express company within the meaning of Minn. St. 295.01, subd. 4, petitioned the commissioner of taxation to review the assessment of 1970 real estate taxes against a tract of land in which it claimed a leasehold interest and to determine the tract was exempt from taxation. The requested relief was denied and REA appealed to the Tax Court, which reversed the commissioner. We reverse the Tax Court.

On November 6, 1968, REA and Rauenhorst Development Corporation entered into a "LEASE AGREEMENT" whereby Rauenhorst purported to lease to REA a 14.2-acre tract of land, located in Eagan Township, Dakota County, with all existing improvements as well as those to be constructed in the future pursuant to the agreement. The term of the lease was approximately 25 years, with three 5-year renewal options and, finally, an option to purchase. Rental for the first 15 years was $115,125 per year, $86,625 per year for the next 10, $64,968 per year for the first

renewal period, $60,637 per year for the second, and $56,306 per year for the third.

Under the agreement Rauenhorst was to construct a terminal building on the property and equip it with a conveyor system according to REA's specifications. Commencement of the term of the lease, possession, and rental payments depended on completion of the terminal, which was anticipated in the agreement to be April 1, 1969, but, because of delay, was July 4, 1969.

On January 2, 1969, the Dakota County assessor valued the property at $35,800 and levied a tax, payable in 1970, of $1,337.63, which was paid, pursuant to the terms of the agreement, by REA. At all times pertinent to the action REA paid a gross earnings tax in compliance with Minn. St. 295.21.[1] REA claims that the levy, and its payment, of both property taxes [2] results in double taxation.

The issues raised in this appeal are:

(1) Did REA have a leasehold interest in the subject property on January 2, 1969, the date of assessment?

(2) In levying an ad valorem property tax, must the assessed value of a tract of real property be reduced to reflect the value of a leasehold interest held by an express company subject to a gross earnings tax in lieu of all ad valorem taxes on its property?

(3) Does the evidence sustain the Tax Court's finding that as of the date of assessment all of the value of the subject property was in the leasehold interest of respondent?

---

[1] Minn. St. 295.21 provides that "[e]very express company * * * shall be assessed a tax equal to five percent of its gross earnings * * *; and the payment of such sum * * * shall be * * * in lieu of all ad valorem taxes upon its property."

[2] The gross earnings tax is a tax upon property, the earnings being merely the measure by which the tax is determined. State v. Fawkes, 210 Minn. 587, 299 N. W. 666 (1941); State v. Railway Express Agency, Inc. 210 Minn. 556, 299 N. W. 657 (1941); State v. United States Express Co. 114 Minn. 346, 131 N. W. 489 (1911), affirmed, 223 U. S. 335, 32 S. Ct. 211, 56 L. ed. 459 (1912).

(4) Under Minn. St. 271.12, may the Tax Court order the commissioner of taxation to certify to a county treasurer that a taxpayer is entitled to a refund of the taxes paid together with interest at the rate of 6 percent per annum?

Because we believe the first issue to be dispositive, we do not reach the other issues raised on this appeal.

If REA is to succeed in its claim of double taxation, it must necessarily appear that it had an interest in the subject property on the date the ad valorem tax was assessed, County of Martin v. Drake, 40 Minn. 137, 41 N. W. 942 (1889); see, also, Bodel Corp. v. State, 249 Minn. 442, 82 N. W. 2d 703 (1957); Merle-Smith v. Minnesota Iron Co. 195 Minn. 313, 262 N. W. 865 (1935); State v. Northwestern Tel. Exchange Co. 80 Minn. 17, 82 N. W. 1090 (1900). Therefore we must determine from the terms of the agreement whether the parties intended a present leasehold interest at the date the agreement was executed, or upon the commencement of the term.

The commissioner relies on our decision in Target Stores, Inc. v. Twin Plaza Co. 277 Minn. 481, 153 N. W. 2d 832 (1967). While respondent carefully attempts to distinguish that decision, we nevertheless believe that it is not so different from the instant case as not to control our decision.

Target presented the issue of whether three agreements, purportedly lease agreements, created interests in a 23-acre tract of real estate which would adversely affect its marketability, as contended by the plaintiff-vendee. Each of the three agreements provided for the lease of one of a number of buildings to be constructed in the development of a shopping center complex with the term and attendant obligations of the lessee to commence upon completion of construction. The "lease agreements" were executed some 3 to 5 years prior to the purchase agreement upon which the action was based, and none had been performed.

This court held that those agreements did not create any interest in the 23-acre tract of land. Acknowledging authority for the proposition that a valid term for years may be created to be-

gin in the future and operate as a present demise of the lease-hold, we distinguished the situation where the subject of the agreement is a building which is to be constructed. Such a trans-action, we reasoned, implied at most an agreement to lease, con-ditioned on completion of the building, which, under well-set-tled principles of landlord-tenant law, does not convey an in-terest in the property.[3]

While it is true that the REA-Rauenhorst agreement involved a tract of land as well as the construction and lease of a building, the contemplated building was by far the more significant reason for the agreement. Absent REA's need for the building, the agreement clearly would never have been made. Moreover, all of the obligations of REA under the agreement relating to the lease were conditioned on the completion of the express facility, as were the term of the lease and possession of the premises. It is evident from the whole of the agreement that the intention of the parties was that no leasehold estate would come into exist-ence until the building was constructed and ready for occupancy.

We conclude that REA did not have a leasehold interest in the subject property on the assessment date and therefore could not properly assert its claim.

Reversed.

---

[3] See, 3 Thompson, Real Property (1959 replacement), § 1062; 1 Ameri-can Law of Property, § 3.17; Tiffany, Landlord and Tenant, § 62; 51C C. J. S., Landlord and Tenant, § 185; 49 Am. Jur. 2d, Landlord and Tenant, § 18.