MERRIMAC MINING COMPANY v. ALBERT F. GROSS
AND OTHERS.
NORTHERN NATIONAL BANK OF DULUTH,
INTERVENER-RESPONDENT.[1]

December 24, 1943.

No. 33,551.

[1]Reported in 12 N. W. (2d) 506.

*Murphy & Cook,* for appellant.

*Abbott, MacPherran, Dancer & Montague,* for respondent Albert F. Gross.

*Holmes, Mayall, Reavill & Neimeyer,* for respondent Edmond F. Gross.

*Joseph W. Ryan,* for respondent Ben R. Hassman as administrator of the estate of Thomas R. Foley.

*H. B. Haroldson* and *John D. Jenswold,* for intervener-respondent.

HENRY M. GALLAGHER, CHIEF JUSTICE.

Plaintiff sued to recover contribution from its co-lessees for rent and taxes which it claims to have paid under the terms of a mining lease. The trial court found for defendants except as to a rent item of $300, to which reference will hereinafter be made. The appeal is from an order denying plaintiff's motion for a new trial.

The lease here involved was entered into on October 13, 1909, between Hans Andersen and wife, as lessors, and Albert F. Gross, Roscoe C. Jamison, and Dan C. Peacock, as lessees. It was to run for a term of 60 years and provided for prior termination by the lessees on 60 days' written notice, and by the lessors on 30 days' written notice in the event of a 60-day default in payment of rent or taxes by the lessees. The lessees agreed to pay the lessors as rental the sum of 12 cents per ton for all ore mined or removed from the land and to mine and remove at the time here involved a minimum of 10,000 gross tons yearly, payment to be made on the first days of November, February, May, and August of each year. They also agreed to pay all taxes which would be assessed against the land from and after the date of the lease. The lessees were permitted to sublease the land.

From 1914 until 1933, the tract, which will hereinafter be referred to as the Andersen forty, was subleased to the Cuyuna Realty Company. That company later subleased it to plaintiff. In 1926, an agreement was entered into between the lessors and lessees permitting cross mining in the operation of the Andersen forty and two contiguous tracts, referred to as the Meacham forty and the Williams-Magoffin twenty, the three tracts being known as the Croft Mine. Ore from all the tracts was raised through the shaft on the Andersen forty, and the properties had to be operated jointly in order to make the operation successful. From 1916, plaintiff owned an undivided 1/3 interest in fee in the Meacham forty and, from 1929 to 1933, had either a lease or a sublease on each of the three tracts. The two subleases and the cross-mining agreement were cancelled in 1933. Between 1933 and 1940, plaintiff at various times negotiated with the lessors in an effort to get cross-mining rights; but no actual mining was carried on after 1933. By agreement of all the leaseholders entered into that year, plaintiff was permitted to keep its mining equipment, machinery, and buildings on the Andersen forty until 1936.

On May 11, 1934, plaintiff wrote a letter to all the lessees which reads:

"We understand that with the exception of Mr. Wilson G. Crosby, and possibly the Foley Estate, all other part owners of the lease originally granted October 13th, 1909, by Hans and Anna R. Andersen to Messrs. Jamison, Peacock and Albert F. Gross, will not pay their taxes due on May 31st, 1934, nor other future payments.

"The Merrimac Mining Company has a large investment in buildings and heavy machinery on this 40 acres, and we fear the Andersens may thus have a lien on same beginning after May 31st, 1934, account unpaid taxes. We wish to continue as at present with the hope that something may be done to resume operation.

"We would be willing to take your places in the above lease, if you would assign your interests to us instead of permitting them merely to lapse, which latter may make our buildings and machinery subject to lien. In this connection we may explain that the

Merrimac Mining Company has paid to you $18,750.00 in advance royalties over and above ore shipped.

"If we thus took your place in this lease, we would have time to turn around and possibly avoid the expense of removing our buildings and machinery.

"Please advise at the earliest possible moment, because May 31st, 1934, will soon be here."

As a result of this letter, three of the leaseholders assigned their respective interests in the Andersen lease to plaintiff, and by virtue of these assignments plaintiff acquired an undivided 22/36 interest in the lease. Defendant Albert F. Gross retained 1/2 of his original interest, or an undivided 6/36 interest. The other undivided interests were owned as follows: 5/36 by defendant Edmond F. Gross; 2/36 by defendant The Carter Corporation; and 1/36 by defendant estate of Thomas R. Foley, deceased. These interests were all acquired by assignments. Defendant Edmond F. Gross offered to convey his undivided interest to plaintiff for $1,200, but the offer was not accepted.

Between January 14 and 20, 1935, the Andersens caused a notice of cancellation of the lease to be served on plaintiff and all the defendants, the default specified in the notice being the failure to pay rent in the sum of $300 which became due on October 20, 1934. The notice provided that if the sum in default, with interest thereon, was not paid within 30 days after service of the notice the lease would terminate. On February 13, 1935, without consulting any of the defendants, plaintiff paid the $300 and interest to the Andersens, thereby removing the default. During the subsequent years, six other notices of cancellation were served on plaintiff, and in each instance it paid the amount of the default without consulting with defendants or any of them. Defendants were not served with any of the subsequent notices. On July 1, 1940, all the interested parties entered into a written agreement terminating and cancelling the Andersen lease.

This suit for contribution was commenced in November 1941. In it plaintiff seeks to recover from defendants approximately $8,-

000 as their proportionate share of the rents and taxes which it claims to have paid under the lease between January 1, 1934, and July 1, 1940.

The trial court found that plaintiff made expenditures for rents and taxes on the land covered by the lease in substantially the amount claimed. There was a specific finding that on August 15, 1936, plaintiff paid to the county treasurer of Crow Wing county the sum of $1,110.30 in full payment and discharge of one-half the taxes levied and assessed against the Andersen forty in 1933, and $2,293.02 in full payment and discharge of the taxes levied and assessed against the same land in 1934. The court further found that after service of the first notice of cancellation plaintiff paid to the Andersens the sum of $300 then in default under the lease without the knowledge or consent of the defendants and with knowledge that defendants, desiring to make no further payments under the lease, intended to let it terminate by refraining from making such payments; that plaintiff made the payment for the purpose of protecting its buildings, machinery, and property; and that all the payments of royalty and taxes thereafter made by plaintiff were voluntary and made to protect its own interest.

The court concluded that plaintiff was entitled to recover from defendants "an undivided 14/36ths of the sum of three hundred dollars ($300.00) paid by plaintiff under date of February 13, 1935," with interest at the rate of six percent per annum, the liabiltiy of the defendants being in the following proportions: Albert F. Gross, 6/14 thereof; Edmond F. Gross, 5/14; The Carter Corporation, 2/14; and Ben R. Hassman, as administrator of the estate of Thomas R. Foley, deceased, 1/14. It also determined "that the additional payments made by plaintiff to Hans Andersen and wife, as alleged in the complaint, were made by plaintiff voluntarily and for the protection of its own interest; that no equity was created thereby as against the defendants; and that plaintiff is not entitled to recover from the defendants therefor." Judgment was ordered accordingly.

■ It is settled law "that one who is compelled to pay or satisfy

the whole or to bear more than his just share of a common burden or obligation, upon which several persons are equally liable or which they are bound to discharge, is entitled to contribution against the others to obtain from them payment of their respective shares." 13 Am. Jur., Contribution, p. 6, § 3; 13 C. J., Contribution, p. 822, § 3; 2 Dunnell, Dig. & Supp. § 1920; Van Brunt v. Gordon, 53 Minn. 227, 54 N. W. 1118; Waldref v. Dow, 172 Minn. 52, 214 N. W. 767; D. M. & N. Ry. Co. v. McCarthy, 183 Minn. 414, 236 N. W. 766; Parten v. First Nat. B. & T. Co. 204 Minn. 200, 283 N. W. 408, 120 A. L. R. 862.

"The doctrine of contribution, although of equitable origin, is now enforced in actions at law, and is made to rest upon the implied promise between co-obligors that if one is compelled to discharge more than his share of the obligation the others will respond to him for their proportionate part." Bolles v. Boyer, 141 Minn. 404, 406, 170 N. W. 229, 230.

The liability is not founded upon contract but rather upon principles of equity and material justice and applies only when the parties are under a common burden with respect to the same transaction. Waldref v. Dow and Parten v. First Nat. B. & T. Co. *supra;* 13 C. J., Contribution, pp. 821, 822; 18 C. J. S., Contribution, § 2. The cause of action arises when one of the co-obligors pays or performs, under compulsion, the common obligation. Township of Canosia v. Township of Grand Lake, 80 Minn. 357, 83 N. W. 346; Bolles v. Boyer, *supra.*

In determining the right to contribution and whether there is an obligation to contribute, the essential factor is payment, under compulsion, by the person seeking contribution of all, or more than his share, of a common liability. To entitle one to contribution, the payment must be compulsory in the sense that the party paying was under legal obligation to pay. Ankeny v. Moffett, 37 Minn. 109, 33 N. W. 320; Manthey v. Schueler, 126 Minn. 87, 147 N. W. 824, Ann. Cas. 1915D, 241; 13 C. J., Contribution, p. 823, § 6; 18 C. J. S., Contribution, § 4; 13 Am. Jur., Contribution, p. 17, § 12,

and cases cited. A payment is deemed in law to be compulsory when the party making it cannot lawfully resist it. 13 Am. Jur., Contribution, p. 17, § 12, and cases cited. The liability may be established in the action for contribution. 2 Dunnell, Supp. § 1922; Ankeny v. Moffett, *supra;* Kemerer v. State Farm Mut. Auto Ins. Co. 201 Minn. 239, 276 N. W. 228, 114 A. L. R. 173.

■ These rules are not seriously disputed in the present case. The controversy appears to center around their application to the facts and circumstances. Defendants concede that plaintiff made the disbursements for which it seeks contribution. Their contention is that *when the Andersens served* the first notice of cancellation on the lessees they terminated the obligation of the plaintiff and of the defendants under the lease and that no subsequent act on the part of plaintiff could or did revive their liability. The position of defendants is thus summarized in the concluding paragraph of their brief:

"In its simplest form the whole answer to plaintiff's claim here is: that performance of compulsory legal obligation must precede any right of contribution. The sole obligee notified defendants of the termination of their rights and obligations and defendants accepted the same. Legal compulsion ended there. But at that point plaintiff volunteered. Equity will not aid a volunteer, and consequently plaintiff must stand alone with its assumed obligation."

We disagree with defendants in their interpretation of the 30 days' notice provision in the lease. The lease could not have terminated upon the mere serving of this notice. *It could terminate only after the notice period had run without the lessees having paid the amount in default during that time.* The applicable provision of the lease reads: "No forfeiture of this lease, however, shall be effective without at least Thirty (30) days written notice specifying the default complained of." Until the forfeiture became effective, the lease continued, and all obligations arising thereunder remained. Even in the absence of such a provision in the lease,

under Minn. St. 1941, § 504.02 (Mason St. 1940 Supp. § 8187), a 30-day notice of default with opportunity to reinstate would be required.

So construing the lease, we find it difficult to follow the reasoning of defendants, adopted by the trial court, to the effect that they are not liable in contribution for the items of rental and taxes which were legal obligations of all the lessees at the time cancellation would have become effective if no one had paid the $300 referred to in the first notice. The trial judge allowed contribution as to the last mentioned item, the reason assigned in his memorandum being that: "The discharge by the plaintiff of the obligation which was already due under the lease in the sum of $300 when the first notice was served, entitles the plaintiff to contribution to that extent." By the terms of the lease, a further payment of $300 rental became due on February 1, 1935. The cancellation would not have become effective at the earliest, under the lease, until February 15, 1935. It seems to us that the same argument applies to this item as was applied by the trial judge to the item of $300, which according to the lease became due on November 1, 1934 (although it was referred to in the notice of cancellation as having become due on October 20, 1934).

By the same reasoning, contribution should have been allowed on the 1933 and 1934 taxes paid by plaintiff. The provision in the lease regarding taxes reads:

"The parties of the second part agree to pay all taxes, general or specific, upon the land so demised, which may be assessed either against the land, and the improvements thereon, or the iron ore product thereof, or any personal property at said mines, from and after this date, *during the continuance of this lease,* and at the termination of this lease, to quietly and peaceably surrender the possession of said land to the parties of the first part. Said taxes at all times to be paid before the lands are sold for their non-payment." (Italics supplied.)

That the 1933 taxes became a lien and charge on the land on

May 1, 1933, and the 1934 taxes on May 1, 1934, is in accord with the holding of this court in Merle-Smith v. Minnesota Iron Co. 195 Minn. 313, 262 N. W. 865. The mining lease there involved was to run from April 1, 1914, to December 31, 1951, the lessee having an option to end the lease prior to that time by giving six months' notice. The lessee covenanted to pay a certain royalty on ore mined, and all taxes assessed during the period. The lessee exercised his option to terminate the lease, and the lease was cancelled on August 14, 1933. Controversy arose as to whether or not the lessee should be required to pay the 1933 taxes. This court held that taxes on realty are assessed for the calendar year as of May 1, upon which date they attach as a lien or charge thereon; and that a lessee who covenanted to pay all taxes assessed during the term of the lease is liable for the taxes assessed for the calendar year if the lease terminates on or after May 1 of that year.

It might be well to call attention to the fact that as between grantor and grantee, Minn. St. 1941, § 272.31 (Mason St. 1927, § 2191), provides that the lien shall attach as of the first Monday in January of the following year.

The clause of the Andersen lease providing: "Said taxes at all times to be paid before the lands are sold for their non-payment," has no effect on our determination that liability to pay the 1933 and 1934 taxes existed before February 15, 1935. The liability was fixed at the time of the assessment of the tax, not at the time when the lands could have been sold for nonpayment. The clause that the "parties of the second part agree to pay all taxes * * * which may be assessed * * * during the continuance of this lease" created the obligation. The clause, "Said taxes at all times to be paid before the lands are sold for their non-payment," prescribed the time before which payment should be made but did not limit the liability to that time. Walker v. Stein, 222 App. Div. 22, 225 N. Y. S. 209; Big Four Realty Corp. v. Belnord Garage, 141 Misc. 472, 252 N. Y. S. 742. The fact that plaintiff did not pay the 1933 and 1934 taxes until 1936 does not affect the outcome. The obligations existed from the time the respective tax items were levied, and the

right to contribution arose when they were paid. Since the taxes as well as the two items of rental were obligations which had accrued prior to the time when the lease could have terminated, plaintiff and defendants were bound to pay them. Galbraith v. Wood, 124 Minn. 210, 144 N. W. 945, 50 L.R.A.(N.S.) 1034, Ann. Cas. 1915D, 609; Blond v. U. S. F. & G. Co. 336 Mo. 684, 80 S. W. (2d) 675, 99 A. L. R. 36. It is interesting to note that the taxes were legal obligations for which the lessees were liable under the lease even before plaintiff acquired by assignment its 22/36 interest.

■ As bearing upon the equities between the parties, it should be considered that it was the continuation of the lease and not the payment of rent by plaintiff that was voluntary. Plaintiff was under a legal obligation to pay the rents and taxes due under the lease. It was not, however, under obligation to pay the amount within the notice time so as to keep the lease alive without the consent and against the known wishes of the defendants. Insofar as the payments discharged existing legal obligations, they were payments made under compulsion, and as to them the equities lie on the side of the plaintiff. But, insofar as the making of payments continued obligations under the lease for the future, they were the voluntary acts of plaintiff; and as to these future payments (i. e., obligations arising under the lease subsequent to February 15, 1935) the equities are in favor of defendants. Since contribution is an equitable demand, any inequitable conduct on the part of one seeking contribution should bar his recovery. Equity will not aid a volunteer, and, in the words of the trial judge, "it is inequitable to permit the plaintiff to enforce contribution from the defendants after reviving the liability without the knowledge, consent or request of the defendants and thus continue the obligation for the benefit of the plaintiff." Defendants were under no compulsion to continue the lease, and plaintiff had no right to compel them, against their will, to continue what they regarded as an unfavorable venture.

We believe that under the circumstances here appearing and based upon all the equities existing between the parties the trial

court was justified in finding that all the payments made by plaintiff subsequent to February 15, 1935, when the lease would have terminated had the default remained, with the exception of the sums paid in August 1936 covering the taxes for the years 1933 and 1934, were made for its own use and benefit. Had it not been for plaintiff's voluntary act of keeping the lease alive, none of these obligations would have arisen; and as to the payment of these obligations, under the equities, plaintiff is not entitled to contribution.

We agree that this is not a controversy between the Andersens and either plaintiff or defendants. But the liability of plaintiff and defendants on the Andersen lease has a material bearing on the question whether plaintiff is to be allowed contribution from defendants for legal obligations discharged thereunder. Nor are we here concerned with whether the Andersens intended to enforce their strict legal rights. There is nothing here to indicate that they did not intend to do so, and the presumption is that they did so intend. Plaintiff was not required to wait until it was sued before making the payment. D. M. & N. Ry. Co. v. McCarthy, 183 Minn. 414, 236 N. W. 766, *supra;* Western C. & S. Co. v. Milwaukee Gen. Const. Co. 213 Wis. 302, 251 N. W. 491. In Manthey v. Schueler, 126 Minn. 87, 88, 147 N. W. 824, Ann. Cas. 1915D, 241, it was held that under a statute requiring support of poor persons by their relatives and providing that any relative who refused support "when directed by the board or council" was subject to a forfeiture, it was not necessary for a relative to await such direction by the town authorities in order for him to have the right of contribution.

There is little merit to plaintiff's contention that defendants should not be allowed to terminate their liability under the lease by their own default. It was the lessors who were exercising the default provision. By giving the January 1935 notice, they elected to forfeit the lease, subject to the lessees' right to make payment within the notice period. Defendants terminated their liability,

not by exercising the default provision themselves, but by acting in accordance with the lessors' exercise of that provision.

Plaintiff contends further that the trial court should have retained jurisdiction to revise the judgments in the event that some of the defendants prove to be insolvent. There was no showing that any of the defendants were insolvent. It is possible that plaintiff may now be able to make such a showing. If so, it may apply to the trial court for the relief sought at the time the decision below is modified.

We have considered plaintiff's other assignments and find no merit in any of them.

The case is remanded with instructions to modify the findings and conclusions in accordance herewith.

Modified and affirmed.

MR. JUSTICE LORING, absent because of accidental injuries, took no part in the consideration or decision of this case.

MR. JUSTICE MAGNEY took no part in the consideration or decision of this case.

