## GEORGE G. WHITNEY AND OTHERS v. ROBERT S. LEIGHTON.[1]

No. 34,285.

April 25, 1947.

[1]Reported in 30 N. W. (2d) 329.

*Thomas C. Fitzpatrick* and *Strong, Strong & Tully,* for appellants. *Robert Cowling,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

This is an appeal from an order of the district court of Hennepin county denying plaintiffs' motion for amended findings and conclusions of law or, in the alternative, for a new trial.

Frank I. Whitney, father of plaintiffs, was the fee owner of the Minneapolis premises involved when he leased the same on April 1, 1917, to one Ira E. Meagher. By the terms of the instrument, the lessee was obligated to pay an annual rental and "taxes and assessments." On June 23, 1917, Meagher, as lessee, assigned his interest in the lease to the Marquette Holding Company, a Minnesota corporation, which in turn assigned the lease on December 19, 1924, to defendant herein. This assignment was recorded in the office of the register of deeds for Hennepin county on December 22, 1924. On December 16, 1936, the lease was reassigned by defendant to the Marquette Holding Company by an instrument recorded the same day.

This action was brought by plaintiffs, owners of the real estate described in the lease, to recover of defendant unpaid rent from 1937 to 1942 and taxes against the property for the years 1936 to 1942. The theory of plaintiffs' case, as set out in the complaint, appears to be that the Marquette Holding Company is a corpora-

tion in form only; that defendant had at all times owned or controlled all the stock of the corporation and used the company for the purpose of avoiding personal liability; and that the reassignment of the lease in 1936 by defendant to the Marquette Holding Company "was merely colorable as being made to one who is to hold in behalf of the aforesaid defendant, and subject to his control and equity." Plaintiffs further contend that the 1936 reassignment was for the purpose of defrauding plaintiffs and placing them in a position where they could not collect the rents and income from the property described in the lease.

The matter was tried before the court without a jury. The trial judge found that "the Marquette Holding Company was at all times mentioned in the complaint a valid and existing corporation organized and doing business under the laws of the state of Minnesota," and that "plaintiffs have failed to prove any fraud or deceit on the part of the defendant in connection with said lease." Judgment was ordered for defendant, out of which order this appeal arises.

The arguments of plaintiffs are to the effect (1) that the reassignment of 1936 was colorable only and that defendant continued in possession of the property, collecting the rents and profits; and (2) that the reassignment failed to relieve defendant from his liability under the lease because of the fact that at the time the reassignment was made he was under an obligation to pay the 1936 taxes on this real estate.

The law with respect to reassignment is set out in 1 Tiffany, Landlord and Tenant, § 158(n), as follows:

"The liability of the assignee of the leasehold on the covenants entered into by the lessee, though based primarily on 'privity of contract,' as existing only by reason of such covenants, is also, in a sense, based on privity of estate, as being imposed on him by reason of his ownership of the leasehold. Consequently, such liability endures only so long as this privity continues, and it comes to an end when the privity is ended by the assignment of the leasehold interest of the assignee to another, a 'reassignment' by him, as it is fre-

quently expressed. The effect thus given to a reassignment by the assignee is not changed by the fact that it is made for the purpose of freeing him from liability, or that it is made with knowledge on his part that his assignee is entirely insolvent, a mere beggar in fact, or is otherwise unable to perform the covenants of the lease. But if the reassignment by the assignee is merely colorable, as being made to one who is to hold in behalf of the assignor and subject to his control, equity will relieve in favor of the landlord."

The power of an assignee to relieve himself from responsibility to the lessor was considered in McLaughlin v. Minnesota L. & T. Co. 192 Minn. 203, 211, 255 N. W. 839, 842, where this court stated:

"Absurd as it may seem to the modern and sensible aversion to anything which smacks of sham, it remains law that an assignee of a lease may, by assigning it, even to a pauper, put an end to his liability in point of time. * * * The legal operation is simple. The holder of it divests himself of the title, the thing to which the obligation is fastened, and so rids himself of the whole burden. By the same token, a mere offer to surrender the lease, unaccepted, can have no such effect because it leaves both title and obligation where they were. So also of mere abandonment of the premises."

See, also, 16 R. C. L., Landlord and Tenant, § 369.

For present purposes, it may be assumed that defendant would be liable for the rent and taxes claimed by plaintiffs unless the 1936 reassignment served to relieve him from the obligations of the lease. At the trial, plaintiffs introduced in evidence an assignment dated December 16, 1936, according to the terms of which Robert S. Leighton and Jessie H. Leighton, his wife, assigned the lease here involved to Marquette Holding Company. From an abstract of title to the real estate offered by plaintiffs and received without objection, it appears that this assignment was filed in the office of the register of deeds of Hennepin county on the same day. To avoid the effect of this assignment, the burden was upon plaintiffs to show that it was fraudulent or merely colorable. As a general rule, one who asserts fraud has the burden of proving it, and he carries the

burden throughout the trial. 3 Dunnell, Dig. & Supp. § 3837; Shaughnessy v. Shaughnessy, 135 Minn. 262, 160 N. W. 769.

There is little dispute in the evidence pertaining to the relation between defendant and the Marquette Holding Company, upon which plaintiffs base their claim that the reassignment was ineffectual. The corporation itself was organized in 1913 by a group of Minneapolis businessmen. Leighton testified that at the time of the incorporation there were 23 shares issued; 11 were in the name of Jessie H. Leighton, defendant's wife; 9 in the name of James G. Swan; and the remaining 3 were owned by William Innis, W. B. Elliot, and T. M. Clements. On January 11, 1915, defendant acquired the Clements share, but he has never had any other stock in the corporation. On that same date, 18 shares were issued to Jessie H. Leighton and 17 shares to Swan. In 1917, when the Meagher lease was assigned to the Marquette Holding Company, the officers were Innis, president; Elliot, vice president; and defendant, secretary-treasurer. At that time the holding company owned interests in other real estate in Minneapolis and Florida. On January 12, 1919, the corporation issued 64 shares to Jessie H. Leighton and 64 shares to Swan, so that the stock ownership was divided as follows:

| | |
|---|---|
| William Innis | 1 share |
| W. B. Elliot | 1 share |
| Robert S. Leighton | 1 share |
| Jessie H. Leighton | 93 shares |
| James G. Swan | 90 shares |
| Total | 186 shares |

In 1919, Swan endorsed his shares to Jessie H. Leighton as collateral security for personal loans, but the shares were never transferred on the books of the corporation. By February 15, 1921, when the Marquette Holding Company joined with the fee owners in the execution of a mortgage on the premises, Jessie H. Leighton had replaced Elliot as vice president. Swan, who had been the "controlling spirit" of the corporation during its early years, apparently became inactive after 1921, while Innis and Elliot never par-

ticipated actively in corporate activities. We quote from Leighton's testimony as follows:

"Q. So that from 1921 on the Marquette Holding Company was Mrs. Leighton, yourself, and Innis?

"A. Yes."

And further:

"Q. From the period of 1924 to date, have you held any stockholders meetings?

"A. Well, no, not formal.

"Q. Have you held any directors meetings?

"A. No, there was only Mrs. Leighton and me around, and there was not any occasions for directors or stockholders meetings that I know of."

It thus appears that the assignment of the lease here involved from the Marquette Holding Company to defendant in 1924 was executed on behalf of the corporation by "J. H. Leighton, Its Vice-President and R. S. Leighton, Its Secretary," at a time when they were in effective control of the corporation. The assignment was made because, as defendant testified, the corporation was indebted to him in an amount between $15,000 and $20,000 at a time when it was suffering losses in the management of certain other real estate, and he was afraid that the owners thereof "would grab the lease of the Whitney property." The reassignment in 1936 was occasioned by defendant's belief that "the lease had become a liability." Although there is some evidence indicating that part of the indebtedness had been paid off, the record is clear that the debt had not been extinguished. The 1921 mortgage, in which the Marquette Holding Company had joined, was thereafter extended by agreement. The first of these agreements, dated April 1, 1926, was signed by defendant and his wife, Jessie H. Leighton, as well as by the fee owners. It recites that "Robert S. Leighton, as assignee of said Marquette Holding Company, is now the holder of a 100 year lease upon said premises." Subsequent extension agreements, dated Jan-

uary 28, 1931, and February 1, 1936, were also executed by defendant and his wife in their individual capacities.

The manner in which the rental property covered by the lease was handled is relevant in considering the claim that the reassignment of the lease in 1936 was merely colorable. It appears from the record that defendant managed and controlled the property at all times. He collected the rents and deposited the receipts in his own personal checking account. He paid the bills out of this same account by personal check. Apparently, disbursements exceeded receipts by about $18,500 prior to 1924, and defendant advanced this money out of his own funds. The record of receipts and disbursements was kept by defendant in the same ledger as that used for his own affairs, but separate accounts were maintained at all times. Defendant conducted a successful contest relative to taxes assessed against the property for the years prior to 1936. Subleases with tenants were made in the name of Marquette Holding Company. Income tax returns were made in the name of the corporation. A letter written to Alfred C. Whitney, a brother of the plaintiffs, dated September 23, 1937, relative to an arrangement whereby defendant agreed to continue the management of the Glenwood property, was signed "Marquette Holding Co. R. S. Leighton Secy." There appears to have been no material change in the manner in which the property was managed during the period from 1924 to 1936, when defendant was the assignee of the lease, as compared with the periods immediately before the assignment and immediately after the reassignment, insofar as maintenance of accounts and collection of rentals and payment of bills is concerned. The record clearly indicates that defendant did not profit by reason of his management of the property subsequent to the reassignment to the corporation. We are confronted with the problem of whether, on these facts, we would be justified in concluding that the Marquette Holding Company was so much a tool of defendant as to require us to disregard the corporate entity and treat defendant and the holding company as one and the same.

We recognize the rule that where a corporation is used as an instrument of fraud the corporate entity will be disregarded and the responsible persons held financially responsible. See, 2 Dunnell, Dig. & Supp. § 1969; Matchan v. Phoenix Land Inv. Co. 159 Minn. 132, 198 N. W. 417; Minifie v. Rowley, 187 Cal. 481, 202 P. 673; 18 C. J. S., Corporations, § 7b, and cases cited; see, also, Wormser, *The Disregard of the Corporate Fiction and Allied Corporate Problems*. But the fraud must be proved. That proof may be difficult is no excuse for dispensing with it, and it is not enough to show mere suspicious circumstances. Silliman v. Dobner, 165 Minn. 87, 205 N. W. 696; 3 Dunnell, Dig. & Supp. § 3839. In the absence of fraud, the corporation must be treated as a legal entity separate and apart from its stockholders. Gallagher v. Germania Brg. Co. 53 Minn. 214, 54 N. W. 1115; In re Trust Under Will of Clarke, 204 Minn. 574, 284 N. W. 876; Matthews v. Minnesota Tribune Co. 215 Minn. 369, 10 N. W. (2d) 230; 2 Dunnell, Dig. & Supp. § 1969, and cases cited.

The Marquette Holding Company was not organized by defendant for the purpose of perpetrating a fraud. As a matter of fact, he was not involved in the original organization, so far as the record shows, and he acquired his one share in the corporation subsequent thereto. While defendant and his wife apparently obtained control of the operations of the corporation, this appears to have been largely because of the fact that the corporation was not a profitable venture and the other shareholders had lost interest in its functions. The assignment of the lease to defendant in 1924 is consistent with a natural desire to protect advances made to the corporation in excess of $15,000. There was no showing that this was a fraud upon other creditors of the corporation and no intimation that it was intended to prejudice plaintiffs. The reassignment of the lease to the corporation in 1936 was for the admitted purpose of escaping obligation to the lessors, but, in light of the rule that an assignee can reassign to a "pauper" if he chooses, it does not appear that defendant was seeking any improper advantage when he returned the lease to the corporation from which he had obtained it. If there were evidence to indicate that following the reassignment defendant had

made raids on the assets of the corporation or had made some improper profit on account of the lease, we would be justified in treating the reassignment as "colorable" and made to one "who is to hold in behalf of the assignor and subject to his control." See, S. T. McKnight Co. v. Central Hanover B. & T. Co. (8 Cir.) 120 F. (2d) 310, 314. However, since the record indicates that defendant did not profit by reason of the reassignment, it would not appear to have been colorable or fraudulent.

We conclude that, while defendant was in a position to exercise considerable control over the Marquette Holding Company, he did not use that power to perpetrate a fraud on the lessor, and, having in mind the rule that the record is to be viewed in a light favorable to the decision of the trial court, we hold that this phase of the findings of that court should be affirmed.

■ Plaintiffs argue that the trial court erred in failing to find that defendant is liable for the 1936 taxes. The findings of the trial court on this issue read as follows:

"VII.

"That all rentals and taxes payable up to December, 1936, under the terms of said lease as modified by the written agreements of the parties to it, have been fully paid."

Since it is undisputed that defendant did not pay the 1936 taxes, this finding is in effect a holding that defendant was not liable for the payment thereof. An assignee, apart from an express agreement to assume and perform or to take subject to the lessee's covenants, is in privity of estate with the lessor and is liable to him personally for a breach of the lessee's covenants which are annexed to and run with the leasehold and which are broken while he holds the leasehold estate. 32 Am. Jur., Landlord and Tenant, § 370. Since the lease at any time and thereby terminate his liability. See, an assignment of the lease by the assignee terminates such privity of estate, he may, in the absence of fraud against the lessor, assign Annotation, 89 A. L. R. 433.

The covenant with which we are now concerned appears in the original lease between the owners of the property and Ira E. Meagher. It reads in part as follows:

"The lessee further agrees that he will as additional rent, pay * * * all taxes and assessments * * * which shall during said term be levied, assessed or otherwise imposed upon said demised premises * * *; it being understood that the first taxes to be paid by the lessee shall be the taxes levied and assessed for the year 1916, * * * and that the last taxes to be paid by the lessee shall be the taxes levied and assessed for the year 2016. *The lessee agrees that he will pay such taxes, impositions and assessments before any fine, penalty, interest or costs under the laws from time to time in force may be added thereto for the non-payment thereof.*" (Italics supplied.)

In Minnesota, taxes on realty are assessed for the calendar year as of May 1, upon which date they attach as a lien or charge thereon. The various steps in the assessment and levy of taxes, whenever finished, relate back to and take effect as of May 1. Hence, a lessee who covenants to pay all taxes assessed during the term of a lease is liable for the taxes assessed for the calendar year if the lease terminates on or after May 1 of that year. Merle-Smith v. Minnesota Iron Co. 195 Minn. 313, 262 N. W. 865. In Craig v. Summers, 47 Minn. 189, 49 N. W. 742, 15 L. R. A. 236, this court held that where an original lease terminated on January 1, 1890, and the findings of the trial court established a continuance of the lease until April 30, 1890, the assignee of the lessee was responsible for the 1889 taxes and assessments which were levied and became a fixed liability against the land during the continuance of the original lease. In that case, the lease provided that the lessees were to pay "all rates, taxes, levies, or assessments on said premises during the continuance of the lease." The court made the comment (47 Minn. 191, 49 N. W. 743):

"* * * A tenant, under a new lease with similar covenants, could hardly be expected to pay taxes and assessments levied upon the land

the year before the commencement of his lease, or after it expired, unless he expressly agreed to do so."

In our opinion, the Craig case is controlling here, unless that portion of the covenant which we have emphasized served to suspend the obligation of tax payment under the lease until the taxes became delinquent. We have not found any Minnesota case directly in point on this question. However, the circuit court of appeals for the second circuit, in In re Sherwoods, Inc. 210 F. 754, 758, Ann. Cas. 1916A, 940, has said:

"It is true that covenants to pay taxes run with the land and upon an assignment of the lease by a lessee an assignee becomes liable to the landlord for all taxes which may thereafter become due and payable under the terms of the lease while the assignee continues in possession of the premises. [Citing cases.] But where before an assignment takes place the tax has already been assessed and the liability of the lessee has been incurred under the covenant to pay taxes assessed during the term, it is not our understanding that an assignment of a lease relieves the assignor from the liability which he has already incurred even though the tax may not be payable until a time subsequent to the assignment."

It has been held almost uniformly in other states that covenants to pay taxes and assessments levied or assessed during the term impose the duty of paying the taxes so assessed, although under the law they are not payable until after the term expires. See, Annotation, 97 A. L. R. 931.

Having reviewed these authorities, we are of the opinion that at the time of the reassignment defendant was under a duty to pay the 1936 taxes. This duty was fixed, because, being in privity of estate with the owners of the fee, he was bound by the terms of the lease which obligated the lessee to pay "all taxes and assessments * * * which shall during said term be levied, assessed or otherwise imposed upon said demised premises * * *." Similar language construed in the case of Craig v. Summers, 47 Minn. 189, 49 N. W. 742, 15 L. R. A. 236, *supra,* was held to put the burden of tax payment

on the assignee in possession at the time of the tax assessment, *i. e.,* May 1. We do not think that the provision that "The lessee agrees that he will pay such taxes, impositions and assessments before any fine, penalty, interest or costs * * * may be added thereto for the non-payment thereof" was intended to suspend the obligation of the lessee until the taxes became delinquent. We think that the language used was adopted in an effort to fix a maximum time within which the duty of paying taxes should be discharged. Considered in this light, the sentence which appears in the present lease and not in the lease in the Craig case tends to give added reason for the application of the rule that an assignee of a lease is under a duty, based on privity of estate, to pay the taxes which under the terms of the covenant were to have been paid by the lessee.

We conclude that under the facts of this case defendant is liable for the taxes assessed against the property here involved for the year 1936. He was not in privity with the owners of the fee when the 1937 and subsequent taxes were assessed, and so our decision is limited to the taxes assessed for the year stated.

The order of the trial court is affirmed in part and reversed in part with instruction to enter findings and conclusions consistent with this opinion.

UPON REARGUMENT.

On January 2, 1948, the following opinion was filed:

FRANK T. GALLAGHER, JUSTICE.

We believe that our original opinion, filed April 25, 1947, should be adhered to. The point raised by defendant in his petition for rehearing was on that portion of the opinion and order contained in No. 2 thereof, relating to the payment of taxes for the year 1936 on the property in question. We still feel that defendant is liable for the 1936 taxes, and we believe that that portion of the original opinion still justifies our position in the matter.

It appears to us that there are three points for consideration in the matter involved in the petition for rehearing which have been determined in the original opinion:

(1)  Did a privity of estate continue as between plaintiffs and defendant until December 16, 1936, the date defendant and his wife reassigned the lease to the Marquette Holding Company?

(2)  Having in mind the covenant contained in the lease, what was defendant's duty with respect to the payment of taxes during the period he was assignee, namely, between December 22, 1924, and December 16, 1936?

(3)  At what time during 1936 were the taxes "levied, assessed or otherwise imposed upon said demised premises"?

In answer to the first question, it is our opinion that such privity of estate did exist as between plaintiffs and defendant until December 16, 1936, as is more fully explained in the original opinion.

With reference to the second question, the covenant in the lease under consideration reads in part as follows:

*"The lessee further agrees that he will as additional rent, pay * * * all taxes and assessments * * * which shall during said term be levied, assessed or otherwise imposed upon said demised premises * * *;* it being understood that the first taxes to be paid by the lessee shall be the taxes levied and assessed for the year 1916, * * * and that the last taxes to be paid by the lessee shall be the taxes levied and assessed for the year 2016. *The lessee agrees that he will pay such taxes, impositions and assessments before any fine, penalty, interest or costs under the laws from time to time in force may be added thereto for the non-payment thereof."*   (Italics supplied.)

It seems to us that the first part of this covenant clearly indicates that defendant as assignee was obligated to pay, as additional rent, all taxes and assessments "which shall during said term be levied, assessed or otherwise imposed upon said demised premises." There can be no dispute that the term of the lease so far as defendant was concerned did not expire until December 16, 1936, the date he reassigned it to the Marquette Holding Company. True, the covenant also provided that the lessee would pay such taxes, impositions, and assessments "before any fine, penalty, interest or costs under the laws from time to time in force may be added thereto for the non-

payment thereof." That portion of the covenant, in our opinion, designates only the limit of time as to the payment of the taxes, but the first part of the covenant definitely creates the obligation to pay, "as additional rent, * * * all taxes and assessments" levied or assessed during the term he was acting as assignee under the lease.

Now, in line with our conclusion that the term of defendant under the lease did not expire until December 16, 1936, the date he reassigned it, we go to the third question, and that is: When were the taxes levied, assessed, or otherwise imposed on the premises for which defendant would be liable during the term of the lease? This question seems to have been clearly settled in Merle-Smith v. Minnesota Iron Co. 195 Minn. 313, 262 N. W. 865, when this court said that taxes on realty are assessed for the calendar year as of May 1, upon which date they attach as a lien or charge thereon, and various steps in the assessment and levy of taxes, whenever finished, relate back to and take effect as of May 1; "hence a lessee who covenants to pay all taxes assessed during the term of the lease is liable for the taxes assessed for the calendar year if the lease terminates on or after May 1 of that year." In the case at bar, we still conclude that the privity of estate, so far as defendant is concerned, did not terminate until December 16, 1936, the date he reassigned the same to the Marquette Holding Company. We further conclude, under the holding in the Merle-Smith case, that the taxes assessed on the real estate in question attached as a lien or charge thereon as of May 1, 1936, and that under the covenant in the lease in the case before us defendant, as assignee of the lessee, was obligated to pay all taxes levied, assessed, or otherwise imposed during the term of the lease, which term expired so far as he was concerned on December 16, 1936, the date he assigned the lease to the Marquette Holding Company. Defendant, as assignee, had the power to put an end to his liability for the 1936 taxes by assigning the lease prior to May 1 of that year and thus escape the obligation to pay the 1936 taxes. He did not reassign until December 16, 1936. So, in compliance with our original decision, we believe that he was liable for the 1936 taxes.

Defendant's counsel earnestly argued that defendant could not have paid the taxes on December 16, 1936, but he so desired, since the various steps in connection with the compilation of the tax would not have been completed until after January 1, 1937. That may be true, but, as held in the Merle-Smith case, *supra,* the various steps in the assessment and levy of taxes, whenever finished, relate back to and take effect as of May 1. The mere fact that the county treasurer's tax record was not completed as of December 16, 1936, so as to make payment of the taxes by defendant possible on that date, would not appear to excuse defendant from the obligation to pay the 1936 taxes at such time as the county treasurer would be prepared to receive them, if the duty to pay the taxes arose as of the time the taxes were levied and assessed, *i. e.,* May 1, 1936. The question is when the duty arose, not when it was to be discharged. We believe that the duty arose as of May 1, 1936, while defendant was still the assignee under the lease.

In Merrimac Mining Co. v. Gross, 216 Minn. 244, 252, 12 N. W. (2d) 506, 511, this court said:

"* * * The liability was fixed at the time of the assessment of the tax, not at the time when the lands could have been sold for non-payment. The clause that the 'parties of the second part agree to pay all taxes * * * which may be assessed * * * during the continuance of this lease' created the obligation. The clause, 'Said taxes at all times to be paid before the lands are sold for their non-payment,' prescribed the time before which payment should be made but did not limit the liability to that time. Walker v. Stein, 222 App. Div. 22, 225 N. Y. S. 209; Big Four Realty Corp. v. Belnord Garage, 141 Misc. 472, 252 N. Y. S. 742. The fact that plaintiff did not pay the 1933 and 1934 taxes until 1936 does not affect the outcome. The obligations existed from the time the respective tax items were levied, and the right to contribution arose when they were paid."

Defendant cites as "squarely in point" here the principles set out by this court in Trask v. Graham, 47 Minn. 571, 50 N. W. 917. There, Trask and Graham, plaintiff and defendant respectively, were originally joint lessees under a five-year lease dated May 5, 1885, with

the St. Anthony Falls Water-Power Company, as lessor. Later, on February 2, 1889, Trask acquired, by assignment, the interest Graham had in the lease. Thus, the resulting action was one in which the assignee sued the assignor, and not, as here, a case where the lessor sued the assignee. It was decided in the Trask case that, as between the assignor and the assignee of a lease, the latter could not recover of the former the 1888 taxes, due January 1, 1889, and delinquent June 1, 1889, the assignment having been made February 2, 1889, *after* the 1888 taxes became due but *before* they became delinquent. In the instant case, the suit is by the lessor against the person in possession as assignee on the date the taxes were levied and assessed, but not yet delinquent. The important thing to note is that the Trask case did not hold that Graham, one of the original lessees, whose interest was assigned to Trask, was released from his obligation to the lessor. It held that where one lessee assigned his interest to another, then, as between the lessee Graham and Trask, his assignee, the latter assumed the liability for the rent and taxes that accrued and became due during his possession as assignee, and that he was liable only for obligations maturing or breaches occurring while he held the estate as assignee. In the instant case, the suit is by the lessor against the person in possession as assignee on the date the taxes were levied and assessed (May 1), but not delinquent. The distinction is significant because in the Trask case the court was endeavoring to ascertain the intent of the parties to the assignment. We are here concerned with the duty of an assignee to the lessor, which is imposed without regard to the intent of the parties.

In our opinion, Craig v. Summers, 47 Minn. 189, 49 N. W. 742, 15 L. R. A. 236, is controlling. The fact that the lease terminated while the assignee in that case was still in possession does not seem material in the absence of a novation or agreement by the lessor to release the lessee from his contractual obligations. There, as here, the lessor had rights based on the covenants of the original lease as against the lessee. In this case, as in the Craig case, the lessors have rights as against the assignee raised by law because of the privity of

estate. We can see no reason for empowering the lessor in the Craig case to hold the assignee responsible for taxes levied and assessed during the period of privity and denying lessors this protection in this case. In the case before us, the lessee had possession of the premises until December 16, 1936, including the rents for that year, and it would seem no more than fair that he should be responsible for the taxes "levied, assessed or otherwise imposed" for the year 1936, especially in view of the ruling in the Merle-Smith case, *supra,* that the various steps in the assessment and levy of the taxes on real estate, whenever finished, take effect as of May 1 of the year they are assessed and become a lien or charge against the real estate as of that date.

MAGNEY, JUSTICE (dissenting).

A hundred-year lease for a term from April 1, 1917, to the 31st day of March 2017 was entered into between F. I. Whitney and wife as lessors and Ira E. Meagher as lessee. On June 23, 1917, the lease was assigned to Marquette Holding Company by Meagher and wife. On December 19, 1924, the lease was assigned to Robert S. Leighton, defendant herein, by the Marquette Holding Company. On December 16, 1936, the lease was assigned by Leighton and his wife to Marquette Holding Company. The lease provided:

"The lessee further agrees that he will as additional rent, pay * * * all taxes and assessments * * * which have been heretofore levied, * * * or which shall during said term be levied, assessed or otherwise imposed upon said demised premises * * *. The lessee agrees that he will pay such taxes * * * *before* any fine, penalty, interest or costs under the laws from time to time in force may be added thereto for the non-payment thereof." (Italics supplied.)

Plaintiffs, the sole heirs of Whitney, the lessor, bring this action to recover from defendant the taxes levied on the leased property in 1936 and payable in 1937; also for taxes levied and payable in subsequent years. Defendant did not pay the taxes levied in 1936 and payable in 1937. In the original opinion and the opinion filed upon reargument, it is held that defendant is liable to the lessor for

the taxes levied in 1936 and payable in 1937, but not for the taxes levied and payable in the subsequent years. In my opinion, defendant is not liable for such taxes.

After the assignment of the lease by the Marquette Holding Company to defendant, defendant was in privity of estate with the lessor. There was no contract relationship. The obligations which defendant owed to plaintiffs were only such as grew out of the privity of estate. In McLaughlin v. Minnesota L. & T. Co. 192 Minn. 203, 207, 255 N. W. 839, 841, where this proposition was discussed, this court said:

"The liability of a lessee's assignee, in the absence of circumstances obligating him contractually to the lessor, is based solely upon privity of estate, which comes into being as to him when, having title to the leasehold, he enters upon the demised premises. Thereby is created that successive relationship to the same property and its title which is known as privity of estate, upon which the law bases the resulting liability of both parties. Trask v. Graham, 47 Minn. 571, 573, 50 N. W. 917. In the instant case the testator, Short, was absolute assignee of the lease. Defendant took from him all the title he had and so can be no otherwise than an absolute assignee itself."

In the instant case, there is an absence of circumstances obligating defendant contractually to the lessor. Thus, his obligation to the lessor is only such as would grow out of privity of estate. In the McLaughlin case, the court continued (192 Minn. 211, 255 N. W. 842):

"* * * The legal operation is simple. The holder of it divests himself of the title, the thing to which the obligation is fastened, and so rids himself of the whole burden."

See, also, O'Neil v. A. F. Oys & Sons, Inc. 216 Minn. 391, 13 N. W. (2d) 8.

In Cohen v. Todd, 130 Minn. 227, 228, 153 N. W. 531, L. R. A. 1915E, 846, an action to recover from the assignee of a lease rent

which accrued after he had made a reassignment and delivered possession to a second assignee, the court said:

"* * * The action cannot be maintained. The assignment to defendant was a naked assignment. Neither by the terms of the assignment, nor in any other manner, did defendant assume any contract obligation to pay rent. As long as he held the property under his assignment the law required him to pay rent according to the terms of the lease. But when he again assigned the term and delivered up possession to a second assignee, his liability for rent thereafter to accrue ceased. This has been the rule of the common law consistently followed for more than 200 years. [Cases cited.] The rule is founded on sound reason. The assignee having assumed no contract obligation cannot be sued on contract. His liability during the time he holds under the lease is founded on privity of estate. After he has surrendered the premises either to the lessor or to another assignee there is no longer privity of estate. There is then no principle of law or equity upon which to predicate liability for *rent to accrue,* and liability no longer exists. This is but an application of the general principle that an assignee of a lease is liable on covenants running with the land, but, being liable solely in privity of estate, he is *liable only for obligations maturing or breaches occurring while he holds the estate as assignee, and not for those which occurred before he became assignee or after he ceased to be such.* Trask v. Graham, 47 Minn. 571, 50 N. W. 917." (Italics supplied.)

In 32 Am. Jur., Landlord and Tenant, § 370, it is stated:

"An assignee, apart from an express agreement to assume and perform, or to take subject to the lessee's covenants, is in privity of estate with the lessor, and is liable to him personally for the breach of the lessee's covenants which are annexed to and run with the leasehold, and *which are broken while he holds the leasehold estate,* * * * ." (Italics supplied.)

In *Id.* § 373, it is stated:

"* * * although the burden of a covenant or agreement runs with the leasehold until the breach, it then ceases to run, because it is thereby turned into a cause of action."

Here, lessee agreed to pay as additional rent all taxes to be levied or assessed against the demised premises during the term of the lease, and agreed that he would pay them before any fine, penalty, interest, or costs might be added thereto for nonpayment thereof. Defendant, an assignee, reassigned the lease on December 16, 1936. The taxes for 1936 became a lien on the premises on May 1, 1936. M. S. A. 272.31; Merle-Smith v. Minnesota Iron Co. 195 Minn. 313, 262 N. W. 865; Merrimac Min. Co. v. Gross, 216 Minn. 244, 12 N. W. (2d) 506. The taxes which became a lien on the premises on May 1, 1936, could not be paid until January 1, 1937, and no penalty for nonpayment would attach until June 1, 1937. Although these taxes could not be paid until January 1, 1937, and although no penalty could attach until June 1, 1937, the majority holds in its opinion that this defendant, who assigned the lease on December 16, 1936, was obligated to lessor to pay these taxes. Under the lease, there was no breach of the covenant to pay taxes until the penalty attached. If lessor had, say on December 17, 1936, the day after the assignment was made, brought suit against defendant to recover the taxes which became a lien on the property on May 1, 1936, he would of course have been met with the defense that the action was premature. It would have been a complete defense. If he had brought such action at any time prior to June 1, 1937, he would have been blocked by the same defense. The obligation to pay these taxes did not mature while defendant was in privity of estate with lessor. He would be liable only for such "obligations maturing or breaches occurring while he" held "the estate as assignee, and not for those which occurred before he became assignee or after he ceased to be such," as stated in the Cohen case, 130 Minn. 228, 153 N. W. 531, L. R. A. 1915E, 846, from which we have quoted *supra.* He is not liable for obligations maturing or breaches occurring after he ceased to be assignee. Here, the obligation to pay taxes did not mature until after the assignment had been made, and no breach

could occur until June 1, 1937. Trask v. Graham, 47 Minn. 571, 50 N. W. 917, is in point. In that case, plaintiff and defendant, as lessees, agreed to pay rent in quarterly installments and to pay all real estate taxes levied on the leased premises during the term of the lease beginning with the taxes for 1885. The lease was dated May 5, 1885, and ran for a term of five years from July 1, 1885. On February 2, 1889, defendant Graham sold his interest in the leased premises to one Whitmore, who represented plaintiff. Plaintiff, it was admitted, was in the position of assignee and succeeded to the sole possession of the premises under the lease as of the date of the transfer. The rent for the current quarter became due April 1 next after the date of the assignment, and the taxes for the year 1888 became payable on the first Monday in January 1889, but not delinquent until June 1, but became and were a separate and fixed liability of both lessees then in possession as to each other. The plaintiff subsequently paid the rent for the whole quarter and also the taxes for 1889, and by the action sought to recover from the defendant Graham the amount of one-half the taxes for 1888 so paid by him, and also one-half the rent that had accrued between January 1 and February 2, the date of the transfer to him, though not due until April 1 following. The court said (47 Minn. 572, 50 N. W. 918):

"As respects the relations of the assignee of a lease, the rule is: 'When a covenant relates to or is to operate upon a thing in being, parcel of the demise, the thing to be done by force of the covenant is, as it were, annexed to the thing demised, and goes with the land, binding the assignee to the performance, though not named; and the assignee, by accepting possession of the land, subjects himself to all the covenants that run with the land." [Cases cited.] The foundation of this liability of the assignee is the privity of estate that exists between him and the lessor. The covenant to pay the rent and taxes runs with the land, and the plaintiff, Trask, under the assignment, assumed the liability for the rent and taxes *that accrued and became due during his possession as assignee.* [Cases cited.] The assignee, being liable solely in privity of estate, is liable

only for *obligations maturing or breaches occurring* while he holds the estate as assignee, and not for those which occurred before he became assignee or after he ceased to be such. Patten v. Deshon, 1 Gray, 325.

"It follows from the application of these principles to this case that the assignee, Trask, was himself liable for the rent for the whole quarter within which he became assignee, the rent not having yet accrued, and which he must be held to have assumed. And the quarter's rent in such cases is not to be apportioned. Graves v. Porter, 11 Barb. 592 [594, 595]. We are unable to see why the same rule does not apply as to the taxes. The covenant to pay was general, and would be satisfied if paid within the year, and so as to save the lessor harmless. The lessees would not be in default, at least till the taxes became delinquent, which would not be till June 1st. There had been no breach of the covenant to pay the taxes, and the assignee took the leasehold estate *cum onere* as to them also. The plaintiff, as assignee, was liable directly to the lessor upon the covenant to pay the taxes. There had been no previous breach of the covenant, and the plaintiff, as assignee, took the place of the lessee in respect to liability upon covenants not yet matured. Mason v. Smith, 131 Mass. 510." (Italics supplied.)

In S. T. McKnight Co. v. Central Hanover B. & T. Co. (8 Cir.) (1941) 120 F. (2d) 310, 320, 321, the court stated:

"We affirm the decision of the trial court that Collins was the lessee of the McKnight lease and that Andrus became the assignee thereof. As such assignee he was bound to the lessor by privity of estate only and obligated to perform the covenants of the lease only while he was in possession of the leased premises. Cohen v. Todd, 130 Minn. 227, 153 N. W. 531, L. R. A. 1915E, 846; Trask v. Graham, 47 Minn. 571, 50 N. W. 917. In 1921 he assigned the lease to his trustees and they likewise became obligated to perform the covenants only while they were in possession.

\* \* \* \* \*

"\* \* \* The lease provided: 'The Lessee, in lieu of additional rents, will pay all taxes and assessments of every kind and nature,

which shall by whatever authority or for whatever purpose, during said term, be levied, assessed, imposed or extended, upon or against said premises or any part thereof, or upon or against any building, structure, or improvement now or hereafter on said premises, beginning with the taxes and assessments for the year 1909, including all annual installments of special assessments for local improvements on said premises, which shall, upon the customary installment plan or otherwise, become due and payable during said term on or after the first Monday of January, 1910; and will pay such taxes and assessments in every instance at least thirty (30) days before any fine, penalty, interest or cost might be added thereto for nonpayment thereof.'

"The only Minnesota decision called to our attention on the question presented is Craig v. Summers, 47 Minn. 189, 49 N. W. 742, 743, 15 L. R. A. 236. In that case the court considered a lease which provided that 'the lessees were to pay all taxes, levies or assessments on the premises during the continuance of the lease', and the court said: 'We think a fair interpretation of the language would make Summers [the lessee] liable for the taxes and assessments which were levied, and became a fixed liability against the land during the continuance of the original lease.' "

The original opinion of the majority cites Craig v. Summers, 47 Minn. 189, 49 N. W. 742, 15 L. R. A. 236, as controlling. That was an action to recover rent and taxes by virtue of a certain lease. The lessees had covenanted to pay (47 Minn. 189, 49 N. W. 743) "all rates, taxes, levies, or assessments on said premises during the continuance of the lease." The term of the lease ended January 1, 1890. Defendant, an assignee of the lease, occupied the premises until the expiration of the lease and paid rent to the expiration thereof. He continued to occupy the premises until April 30, 1890, under an express parol agreement to pay rent at the same rate as called for in the lease. All the covenants remained operative until April 30, 1890. As to taxes, the court said (47 Minn. 191, 193, 49 N. W. 743, 744) :

"* * * We think a fair interpretation of the language would make Summers liable for the taxes and assessments which were levied, and became a fixed liability against the land, during the continuance of the original lease, and these taxes were such. * * * Summers, therefore, appears to have incurred this liability by virtue of the terms of his original lease, * * *.

* * * * *

"Our conclusion is that, by the rules of law applicable to the case, the defendant is liable to the plaintiffs for the taxes for the year 1889, they being in privity of estate with him."

Thus, when the lease terminated in the Craig case, and for some time prior thereto, the defendant was in privity of estate with the lessor's grantees. Under the terms of the Craig lease, the lessees covenanted to pay "all * * * taxes, levies, * * * on said premises during the continuance of the lease." At the time the lease terminated, there were taxes levied on the property. The defendant was in privity of estate at that time. If these were not paid, there was a breach of covenant. As defendant was in privity of estate with lessors at that time, it was *his* breach of covenant, and he would be liable for the payment of these taxes. As assignee and lessee at the time the lease terminated, defendant was at the end of the line. He was then the tenant of the lessor. He had not and could not pass on the obligation. As between lessor and lessee, the taxes which had been levied became due and payable while defendant was in privity of estate with the owner of the lease. The promises matured when Summers was in possession. That is not the situation in the instant case. The taxes which had been levied were not due and payable while defendant here was in privity of estate with the lessor, but became due and payable under the covenants of the lease after defendant had assigned. In my opinion, Craig v. Summers was decided correctly on the facts there presented, in that it held liable the person in privity of estate at the time the obligation became due and payable.

In Merle-Smith v. Minnesota Iron Co. 195 Minn. 313, 262 N. W. 865, the lease terminated on August 14, 1933. The lien for taxes

attached on May 1, 1933, payable in 1934. Lessee covenanted to pay all taxes assessed during the term of the lease. When the lease terminated, the taxes, of course, under the lease became due and payable, and the one in privity of estate at that time was held liable. In the instant case, the court is holding a party liable who was not in privity of estate when the obligation became due and payable.

For the reasons above set forth, I respectfully dissent.

PETERSON, JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Magney.

MATSON, JUSTICE (dissenting).
I concur in the dissent of Mr. Justice Magney.